UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MD ISLAM, DOH OUATTARA, ABDUL RUMON,
HARNEK SINGH, and NEW YORK TAXI
WORKERS ALLIANCE,

                                                   Civil Action No.
                                                   20-cv-2328-LDH-CLP

                         Plaintiffs,

     -Against-

ANDREW CUOMO, GOVERNOR OF THE STATE
OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF LABOR, and ROBERTA
REARDON, as COMMISSIONER OF LABOR,

                         Defendants.
-------------------------------------------------------------------x

_____

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF A MOTION FOR A PRELIMINARY INJUNCTION
_____

ZUBIN SOLEIMANY, Esq.          BROOKLYN LEGAL SERVICES
New York Taxi Workers Alliance    Nicole Salk
31-10 37th Ave. Ste. 300          Sarah E. Dranoff
Long Island City, NY 11101       Udoka Odoemene
(718) 706-9892                  105 Court Street, 3rd floor
Attorney for Plaintiffs           Brooklyn, NY  11201
                                (718) 237-5544
                                Attorneys for Plaintiffs

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ...................................................................................................................................... 3

ARGUMENT ............................................................................................................................ 3

I. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT INJUNCTIVE RELIEF . 4

   A.   DEFENDANTS' FAILURE TO PAY BENEFITS WHEN DUE IS CAUSING
   IMMEDIATE AND IRREPARABLE HARM TO PLAINTIFFS ............................................ 6

   B.   DEFENDANTS' FAILURE TO PAY BENEFITS WHEN DUE IS CAUSING
   IMMEDIATE AND IRREPARABLE HARM TO THE NYTWA ......................................... 8

  II. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS
OF THEIR CLAIMS .............................................................................................................. 11

   A.   DEFENDANTS' FAILURE TO PROCESS PLAINTIFFS' UI CLAIMS AND ISSUE
   BENEFITS IN A TIMELY MANNER VIOLATES THE "WHEN DUE" CLAUSE OF THE
   SOCIAL SECURITY ACT ................................................................................................ 12

     1.   The DOL's Failure to Require App -Based FHV Companies to Report Their Drivers'
     Earnings as Wages Earned in Employment Significantly Delays the Issuance of Benefits in
     Violation of the "When Due" Clause ..................................................................................... 14

     2.   DOL's Misclassification of App-Based Drivers in Defiance of Settled Law By
     Instructing Them to Apply for Pandemic Unemployment Assistance Prevents Claimants
     from Receiving Full Benefits When Due ............................................................................... 17

   B.   DEFENDANTS' DIFFERENTIAL ENFORCEMENT OF THE LABOR LAWS
   VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
   AMENDMENT.................................................................................................................. 19

III. THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST SUPPORT GRANTING A
PRELIMINARY INJUNCTION ............................................................................................. 22

CONCLUSION....................................................................................................................... 24

## TABLE OF AUTHORITIES

**CASES**

*Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977) ............................ 8

*Bell and Howell v. Masel Supply Co.*, 719 F.2d 42 (2d Cir.1983) ................................. 5

*Brown v. Giuliani*, 158 F.R.D. 251 (E.D.N.Y. 1994) .............................................. 4, 14

*Burtton v. Johnson,* 538 F.2d 765 (7th Cir. 1976) ...................................... 12, 13, 14, 16

*California Dept. of Human Resources Development v. Java*, 402 U.S. 121 (1971)......... 12, 13, 23

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017) ...................................................................... 8, 10

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. DeBlasio,* 364 F. Supp. 3d 253 (S.D.N.Y. 2019) ............................................................................. 5

*City of New Orleans v. Dukes*, 427 U.S. 297 (1976) ............................................ 19

*Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992)................................................. 6

*Dominici v. Lentini,* 24 Fed. Appx. 86 (2d Cir. 2001) ............................................ 19

*Dunn v. New York State Dept. of Labor*, 1994 U.S. Dist. LEXIS 1512 (S.D.N.Y 1994)............. 13

*F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) ........................................... 19

*Fusari v. Steinberg*, 419 U.S. 379 (1975)............................................. 13, 18, 19

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ......................................... 8

*Heller v. Doe by Doe*, 509 U.S. 312 (1993)................................................... 19

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) ................................................ 4

*Make the Road New York v. Cuccinelli*, 419 F. Supp. 3d 647 (S.D.N.Y. 2019) ................... 22

*Martinez v. Cuomo*, 2020 U.S. Dist. LEXIS 83518 (S.D. N.Y. May 12, 2020)...................... 4

*Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006)................................. 4

*Matter of Vega (Postmates)*, 2020 NY Slip Op 02094, 2020 N.Y. LEXIS 655 (March 26, 2020) ................................................................................. 15

*Morel. v. Giuliani,* 927 F. Supp. 622 (S.D.N.Y. 1995)..................................................... 5

*New York Civil Liberties Union v. New York City Transit Authority*, 684 F.3d 286 (2d Cir. 2012) .................................................................................................................................. 8

*New York ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638 (2d Cir. 2015) ............................ 4

*New York v. U.S. Dep't. of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019) .......................... 23

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ............................................................... 8

*Plyler v. Doe,* 457 U.S. 202 (1982)............................................................................ 19

*Ragin v. Harry Macklow Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993).......................................... 8

*Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904 (2d Cir. 1990) ........................................ 5

*Saget v. Trump,* 375 F. Supp. 3d 280 (E.D.N.Y. 2019)...................................................... 5, 22, 24

*Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317 (2d Cir. 1999)............................ 5

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995) .............................. 4

*Wilkinson v. Abrams*, 81 F.R.D. 52 (E.D. Pa. 1978)......................................................... 13

*Windsor v. United States,* 699 F.3d 169 (2d Cir. 2012)...................................................... 19

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)...................................... 22

*Yang v. Kellner,* 2020 U.S. Dist. LEXIS 79331 (S.D.N.Y. May 5, 2020)................................... 4

*Zynda v. Arwood*, 175 F. Supp. 3d 791 (E.D. Mich. 2016) ................................................ 13

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Equal Protection Clause of the Fourteenth Amendment ........... 1, 2, 6

**STATUTES**

N.Y. Labor Law § 518 ........................................................................................ 18

N.Y. Labor Law § 575(1) ................................................................................... 19

N.Y. Labor Law § 623(1) ................................................................................... 15

N.Y. Labor Law § 634 ........................................................................................................... 19

N.Y. Tax Law § 674(a)(4)(A) ................................................................................................ 19

Social Security Act of 1935, Title III, 42 U.S.C. §§501-504 ...................................... 12

Social Security Act of 1935, Title III, 42 U.S.C. § 503(a)(1) ................................... *passim*

**REGULATIONS**

12 N.Y.C.R.R. § 472.2 ......................................................................................................... 19

12 N.Y.C.R.R. § 472.3(c) ..................................................................................................... 19

12 N.Y.C.R.R. § 472.8 ......................................................................................................... 20

20 C.F.R. § 625.4(i) ............................................................................................................. 18

20 C.F.R. §625.6(a)(2) ......................................................................................................... 18

20 C.F.R. §640.3(a) .............................................................................................................. 12

**OTHER AUTHORITY**

*In the Matter of Uber Technologies, Inc.,*
Appeal Board No. 596722-596727 (July 12, 2018) ................................................ 15, 16, 20-21

**MISCELLANEOUS**

*Audio & Rush Transcript: NYS Labor Commissioner Reardon Announces Directive Requiring Employers to Provide Information New Yorkers Need to Apply for Unemployment Benefits* (April 20, 2020) *available at* https://www.labor.ny.gov/pressreleases/2020/april-29-2020.shtm ................................................................................................................................................ 20

*Important Changes to Driving in New York City* (website), https://www.uber.com/blog/new-york-city/tlc-rule-changes/ ............................................................................................... 15

Noam Scheiber, *Drivers Say Uber and Lyft Are Blocking Unemployment Pay*, NEW YORK TIMES, March 24, 2020, *available at* https://www.nytimes.com/2020/03/24/business/economy/coronavirus-uber-lyft-drivers-unemployment.html ............................................................................................................. 16

*Pandemic Unemployment Assistance* (website), *available at* https://www.labor.ny.gov/ui/pdfs/pua-factsheet.pdf ............................................................ 18

*Remarks as Prepared: Governor Cuomo Outlines 2020 Agenda: Making Progress Happen*, (2020) available at: https://www.governor.ny.gov/news/remarks-prepared-governor-cuomo-outlines-2020-agenda-making-progress-happen ..................................................................... 21

U.I. Claimant's Handbook ........................................................................................ 18

U.S. Department of Labor Unemployment Insurance Program Letter No. 16-20 Change 1 (April 27, 2020) ................................................................................................................. 18

Uber NLRB Position Statement, 29-RC-184415 (Sep. 27, 2016) ................................................. 15

## PRELIMINARY STATEMENT

This action arises out of Defendant DOL's failure, in the midst of the COVID-19 pandemic, to pay unemployment insurance (UI) benefits to Plaintiffs and other former drivers for Uber, Lyft, and other app-based For-Hire Vehicle (FHV) employers in a timely fashion.  In continuing to treat such drivers as independent contractors rather than employees under the unemployment insurance (UI) law, Defendant DOL has willfully disregarded controlling precedent from the Unemployment Insurance Appeal Board ("UIAB") and the New York Court of Appeals.  Despite this precedent, Defendants have failed to collect wage earnings data from such employers, causing Individual Plaintiffs' UI applications to be delayed by up to seven weeks or more, leaving them without income, and with no choice but to resort to applying for public assistance and borrowing from friends and relatives in order to provide food and basic necessities for their families.  Defendants' actions violate the Social Security Act's "when due" provision by failing to provide benefits to eligible claimants as soon as practicably possible, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs seek a preliminary injunction enjoining Defendant DOL to immediately pay UI benefits to all eligible app-based driver claimants.

Defendants' failure to provide UI benefits as soon as administratively feasible, if permitted to continue, will cause irreparable harm to the Individual Plaintiffs and other app-based drivers facing unprecedented unemployment due to the pandemic.  A substantial number of drivers are experiencing extreme economic deprivation and facing growing food insecurity. Without timely access to the full benefits to which they are entitled, Plaintiffs and other drivers have been unable to pay their rent or make payments to maintain the tools of their trade:

1

vehicles, vehicle insurance, and cellphones, threatening their ability to return to work even when they would otherwise be available to do so.

Further, Defendants' failure to follow settled law, if permitted to continue, will cause irreparable harm both to the NYTWA's app-based driver members and to the organization itself. Hundreds of NYTWA members are, like Individual Plaintiffs Islam and Ouattara, either running out of food or about to do so, and many NYTWA members fear adverse immigration consequences for their families if they apply for necessary SNAP benefits, based on the so-called "public charge" rule. Defendants' failure to pay benefits when due is harming the NYTWA by requiring a near total diversion of resources to handling the myriad UI and Pandemic Unemployment Assistance (PUA) issues its members face. Despite finite resources, the NYTWA has had to devote most of its time to what should, for employee claimants, be a straightforward process, diverting NYTWA's staff resources away from other vital priorities, such as combatting wage theft and even assisting the families of recently deceased members.

The DOL's failure to follow settled precedent and treat Plaintiffs and other app-based drivers as employees for UI purposes violates the Social Security Act and the Equal Protection Clause of the Fourteenth Amendment. The unreasonable delays in issuance of UI payments caused by Defendants' inaction violate the "when due" provision of the Social Security Act. By disregarding its own binding decisions, and then failing to require earning data reporting by app-based FHV companies, Defendant DOL has added months of delay to the receipt of benefits for workers whose employment status is a matter of settled law. Further, by routing employee drivers into a federal unemployment program intended for independent contractors, which requires additional applications and review of worker-provided wage documentation, Defendant DOL is also creating significant delays. Because such delays arise from Defendants' irrational

decision to ignore binding precedent, they are *per se* unreasonable, and thus violate the Social Security Act. Moreover, Defendants' failure to enforce against app-based FHV companies the wage reporting laws that all companies determined to be employers must follow denies Plaintiffs equal protection. There is no conceivable rational basis for the DOL to flout its own binding precedent and refuse to enforce labor and tax laws against app-based FHV employers whose status under the UI law is a settled matter.

If Defendants' misclassification of app-based driver claimants continues, drivers will continue to suffer significant delays in receiving benefits, endangering their ability to feed themselves and their families and to pay vehicle and insurance bills that will allow them to return to work once the pandemic crisis abates. In contrast, Defendants will suffer no significant harm by being enjoined to abide by federal and state law and follow their own administrative decisions. Rather, the public interest will be served by ensuring that Defendants enforce the laws they exist to administer. Any hardship the DOL may encounter in treating app-based employers the same as all other employers would be minimal compared to the serious and irreparable harm facing the Plaintiffs if they do not receive the UI benefits they are entitled to when due.

## FACTS

Plaintiffs respectfully refer the Court to the Complaint and the Declarations submitted herewith for a full recitation of the facts.

## ARGUMENT

Where a moving party seeks a mandatory preliminary injunction that will alter rather than maintain the status quo, the district court may enter a preliminary injunction against the government where it determines that, "in addition to demonstrating irreparable harm, the moving party has shown a 'clear' or 'substantial' likelihood of success on the merits*." Mastrovincenzo v.*

*City of New York*, 435 F.3d 78 (2d Cir. 2006) (*citations omitted*).  This standard also applies

where the injunction will provide the movant with substantially all the relief sought.  *New York*

*ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638, 650 (2d Cir. 2015) (*citing Tom Doherty*

*Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995).

Despite this heightened standard, courts in this Circuit have not hesitated to grant

mandatory injunctions against the government, in appropriate circumstances.  *See, e.g., Jolly v.*

*Coughlin*, 76 F.3d 468, 483 (2d Cir. 1996) (affirming preliminary injunctive relief granted to

incarcerated plaintiff and requiring state prison officials to release him from "medical keeplock"

for declining TB screening, on showing of substantial likelihood of success of his claims under

the Religious Freedom Restoration Act and the Eighth Amendment).  Recently, in *Yang v.*

*Kellner,* 2020 U.S. Dist. LEXIS 79331 (S.D.N.Y. May 5, 2020), the court granted the plaintiffs'

motion for a temporary restraining order and preliminary injunction enjoining state election

officials from canceling the primary and reinstating qualified candidates to the ballot.  *Yang*,

2020 U.S. Dist. LEXIS 79331 at *42; *see also, Martinez v. Cuomo*, 2020 U.S. Dist. LEXIS

83518 at *18 (S.D. N.Y. May 12, 2020) (enjoining Governor Cuomo to implement in-frame ASL

interpretation immediately to ensure access to daily COVID-19 briefings by plaintiffs and other

New Yorkers whose primary language is ASL).  In this case, Plaintiffs meet each element of this

standard.

## I.   PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT INJUNCTIVE RELIEF

The Individual Plaintiffs and the NYTWA will be irreparably harmed if UI benefits owed

to app-based drivers are not paid when due in violation of law.  The showing of irreparable harm

is the single most important factor for the issuance of a preliminary injunction.  *Brown v.*

*Giuliani*, 158 F.R.D. 251, 264 (E.D.N.Y. 1994), *citing Bell and Howell v. Masel Supply Co.,* 719

4

F.2d 42, 45 (2d Cir.1983).  Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages.  *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 909 (2d Cir. 1990).  Irreparable harm must be an actual and imminent injury—one that cannot be remedied if a court waits until a final adjudication on the merits.  *Saget v. Trump,* 375 F. Supp. 3d 280, 374 (E.D.N.Y. 2019).

In the current pandemic, Individual Plaintiffs and thousands of app-based drivers including NYTWA members who are app-based drivers (hereinafter "app-based driver members") are experiencing immediate extreme economic deprivation.  App-based driver members include a substantial number of drivers with families who are now food insecure, and many drivers who are facing the immediate risk of losing the necessary tools to enable them to return to work, i.e., their cars, car insurance and cellphone service.  *See* Declarations of MD Islam ¶¶ 5, 19-24, Doh Ouattara ¶¶ 16-18, and Bhairavi Desai ¶¶ 7, 12-16.  Damages are not available against the State of New York in this case.  However, even if damages were available, no amount of damages could remedy the immediate and profound harm to Plaintiffs caused by the non-receipt of UI benefits to which NYTWA's app-based driver members are legally entitled.  For indigent persons, the loss of even a portion of subsistence benefits constitutes irreparable injury.  *Morel. v. Giuliani,* 927 F. Supp. 622, 635 (S.D.N.Y. 1995).

Moreover, where the harm alleged is a deprivation of a constitutional right, the Court should presume the existence of irreparable harm.  *Christa McAuliffe Intermediate Sch. PTO, Inc. v. DeBlasio,* 364 F. Supp. 3d 253, 276 (S.D.N.Y. 2019); *Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d

Cir. 1992).  As Plaintiffs allege a violation of their right to equal protection of the laws pursuant to the Fourteenth Amendment to the United States Constitution, this condition is satisfied.

### A. Defendants' Failure To Pay Benefits When Due Is Causing Immediate And Irreparable Harm To Plaintiffs

Plaintiffs Islam, Ouattara and the NYTWA face immediate irreparable harm due to Defendants' failure to pay UI benefits in a timely manner.  Individual Plaintiffs as well as many of NYTWA's app-based driver members have applied for UI benefits but have either received no benefits or received a sharply reduced weekly benefit rate (WBR) because their earnings from app-based employers were not used to establish their WBR.  As a result of Defendants' failure to pay UI benefits, Individual Plaintiffs Islam and Ouattara and many of NYTWA's app-based driver members are no longer able to afford basic necessities for themselves and their families, including food, rent, and utilities.  Plaintiffs are also suffering substantial stress and anxiety as a result of the delay in receipt of UI benefits.

### PLAINTIFF ISLAM

Plaintiff Islam is the sole provider for his household, including himself, his wife, and three children ages 18, 13 and 9.  *See* Declaration of MD Islam. ¶18.  Since he was forced to stop working in mid-March due to the onset of the pandemic, he now has no income, no savings and receives no benefits.  *Id* at ¶5.  His bank account is overdrawn and he now owes his bank $115.00.  *Id.* at ¶19.  He has not been able to pay his rent or any other bill that has come due since March, 2020.  *Id.* at ¶20.  He has applied for food stamps (SNAP), which application is still pending.  *Id.* at ¶21.  His relatives, many of whom also are not working but have limited savings, have been lending him money to buy food for his family but he does not know how long they will be able to continue to lend him money.  *Id.* at ¶22.  He is receiving free food from the New York City COVID-19 Emergency Food Distribution program, without which he and his family

would not have enough to eat. *Id.* at ¶23.  Since he has not paid his bill, his cellphone service is likely to be cut off soon. *Id.* at ¶24.  As cellphone service is essential to receive work through the Lyft app, without cellphone service, he will not be able to return to work. *Id.* at ¶24.

In addition, Plaintiff Islam is experiencing severe emotional strain and anxiety due to the lack of UI benefits because he is worried about how he will pay the bills and feed his family. *Id.* at ¶26.  While he has received notice that he is eligible for Pandemic Unemployment Assistance (PUA), he was approved for a WBR of $291, which is much lower than the $504 WBR to which he would be entitled if approved for UI.  Plaintiff Islam has yet to receive any benefits. *Id.* at ¶¶14, 25.  He is unable to sleep more than two to three hours during the night as a result of the delay in receipt of unemployment benefits. *Id.* at ¶26.

## PLAINTIFF OUATTARA

Plaintiff Ouattara is the sole provider for himself, his wife, and his three minor children ages five, three and five months. Declaration of Doh Ouattara ¶15.  Plaintiff Ouattara stopped working on March 16, 2020 as a result of COVID19. *Id.* at ¶5.  He applied for UI on April 1, 2020. *Id.*  ¶6, 17.  He has no income, limited savings and receives just $326 a month in SNAP benefits for his family. *Id.* at ¶16, 19.  Prior to bringing this lawsuit, he was unable to pay May rent, and could only pay half of April's rent. *Id.* at ¶17.  He also was unable to pay his utility bills and anticipated that he would have trouble paying his June vehicle insurance bill. *Id* at ¶18. Plaintiff Ouattara is anxious and losing sleep because of his inability to pay his bills and support his family. *Id.* at ¶21.

Immediately following the filing of this lawsuit, Plaintiff was approved for $182 in PUA benefits.  The benefit rate of $182.00 bares no relationship to either his gross or net income. Due to the fact that he has only been approved for $182.00 per week and will not receive $600 per

week in Federal Pandemic Unemployment Compensation (FPUC) after July 31, 2020, Plaintiff

Ouattara will sufferable irreparable injury without the receipt of UI benefits.

**B.  Defendants' Failure To Pay Benefits When Due Is Causing Immediate And Irreparable Harm To The NYTWA**

Defendants' failure to pay UI benefits when due is causing irreparable harm to the

NYTWA as an organization, which more than adequately establishes the NYTWA's standing to

bring this proceeding.  An organization has standing to sue in its own right where it alleges "such

a personal stake in the outcome of the controversy" that federal court jurisdiction is warranted.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (*citing Arlington Heights v.

Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261 (1977) (*internal quotations omitted*)).  As

with an individual complainant, an organization must show actual or threatened injury in fact

that is "fairly traceable to the illegal action and likely to be redressed by a favorable court

decision."  *Ragin v. Harry Macklow Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993) (*internal

quotations omitted*).  Only a "perceptible impairment" of an organization's activities is necessary

for an "injury in fact" to exist.  *New York Civil Liberties Union v. New York City Transit

Authority*, 684 F.3d 286, 294 (2d Cir. 2012); *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011)

(*citing Ragin,* 6 F.3d at 905) (*internal citations omitted*); *see also Havens*, 455 U.S. at 379.

As set forth below, Defendants' actions and failures to act have caused ongoing

irreparable injury both to NYTWA's app-based driver members and to the NYTWA.  Non-profit

organizations are deemed to suffer irreparable harm when an administrative rule or action causes

"ongoing harms to their organizational missions," including diversion of resources.  *See Nnebe v.

Daus*, 644 F.3d at 157; *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster

Bay*, 868 F.3d 104, 111 (2d Cir. 2017).  The NYTWA has been required to redirect substantial

resources from other organizational priorities to address the emergent unemployment and

8

economic needs affecting its app-based driver membership since the onset of the pandemic.  In addition to the Individual Plaintiffs, all of whom are NYTWA members, many of NYTWA's app-based driver members have been irreparably harmed by the DOL's failure to pay UI benefits.  Due to the huge drop in ridership as a result of COVID-19, at least 85% of NYTWA's app-based driver members who have recently requested help from NYTWA have applied for UI. Declaration of Bhairavi Desai ¶11.  With the exception of those who were able to establish a monetary benefit rate through employment other than driving for an app-based employer, no NYTWA app-based driver member has received UI.[1]  *Id.*  Most NYTWA app-based driver members who have been in contact with NYTWA, have been waiting over eight weeks to receive UI benefits.  *Id.*

Many of NYTWA's app-based driver members currently lack sufficient resources to pay for food for themselves and their families.  *Id.* at ¶12.  As of May 12, 2020, over 80% of 919 members submitting a form to request assistance from NYTWA regarding their needs and concerns during the current crisis (NYTWA's Assistance Request Form) have either run out of food or are about to run out of food.  *Id.* at ¶¶7, 12.  Many drivers are applying for SNAP benefits, applying to the City for free food, or waiting in line for food at food banks.  *Id.*  In addition, many drivers cannot afford to pay rent or other bills because they have not received UI. *Id.* at ¶16.

As a result of not receiving unemployment benefits, many of NYTWA's app-based driver members are not able to afford vehicle insurance, car payments, and cellphone bills. *Id.* at ¶14. According to NYTWA's Assistance Request Form responses, 211 drivers missed a car insurance payment, 160 missed a car payment, and 223 missed a cellphone payment.  *Id.* Without vehicle

---

[1] Some NYTWA FHV members may be receiving PUA benefits but at rates that are generally much lower than what they would have received had they been found eligible for UI as required by State and Federal law.

insurance, a car, and a cellphone, an app-based driver cannot return to work.  In addition, drivers who default on car payments may have their vehicles repossessed, see their credit destroyed, and find themselves subject to higher financing rates if they try to purchase another work vehicle in the future.  *Id.* at ¶15.

Most of NYTWA's members are immigrants, and many are not U.S. citizens.  Some members who have work authorization and are eligible for UI benefits may not be eligible for public assistance or SNAP benefits because of their immigration status.  *Id.* at ¶13.  Many NYTWA members are concerned that applying for SNAP and public assistance could affect their ability to gain citizenship or remain in the country legally.  *Id.*  Even if NYTWA members are eligible for public assistance or SNAP and will not be considered to be a "public charge," many legitimately fear that the rules may change so that their acceptance of these benefits now will affect their ability to gain citizenship later.  *Id.*  Even some members who are U.S. citizens but hope to sponsor relatives for immigration purposes in the future fear that accepting SNAP or public assistance benefits now could affect their ability to sponsor relatives later.  *Id.*

NYTWA members are terrified and suffering enormous stress and anxiety caused by the lack of financial resources.  *Id.* at ¶17.  Many members are not sleeping and report that they are suffering from depression, anxiety, and other serious mental health issues as a result of having no income or financial benefits to provide for their families.  *Id.*

The DOL's failure to pay UI benefits to NYTWA's app-based driver members is causing irreparable harm to NYTWA because it requires NYTWA to divert resources away from other priorities of the organization.  *See Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 111 ("[W]here an organization diverts its resources away from its current activities, it has suffered an injury that has been repeatedly held to be independently sufficient to confer

organizational standing.").  Since mid-March when the closure of New York State began as a result of the COVID-19 pandemic, NYTWA's staff members have spent the majority of their time assisting drivers with UI benefits guidance and advocacy, including assisting the Individual Plaintiffs in this case, all of whom are members of NYTWA.  Declaration of Bhairavi Desai, at ¶4.  Time spent assisting NYTWA app-based driver members with their UI claims has diverted staff resources from other vital organizational priorities such as combatting wage theft committed by app-based employers and taxi companies, and seeking debt forgiveness for taxi drivers.  *Id.* at ¶21.  The need to respond to drivers' immediate and pressing UI problems has prevented the NYTWA from moving forward on other vital needs for drivers during the pandemic, such as organizing for personal protective equipment for drivers who are still working, and for all drivers when business returns, and has even prevented NYTWA from providing assistance to the families of recently deceased members.  *Id.* at ¶22.  The DOL's failure to pay UI benefits to NYTWA's app-based driver members is causing irreparable harm to NYTWA's organizational mission, which will intensify unless injunctive relief is granted.

## II. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS

As set forth below, Defendants have violated the "when due" provision of the Social Security Act by: 1) delaying payment of unemployment benefits, and 2) directing Plaintiffs and other app-based driver claimants to apply for benefits through PUA, which prevents app-based drivers from receiving the full benefit rate to which they would otherwise be entitled.  Further, in failing to pay UI benefits to Plaintiffs because the DOL has elected not to enforce New York law against app-based employers, Defendants are denying Plaintiffs equal protection under the laws in violation of the Fourteenth Amendment.

**A. Defendants' Failure To Process Plaintiffs' UI Claims And Issue Benefits In A Timely Manner Violates The "When Due" Clause Of The Social Security Act**

Title III of the Social Security Act of 1935, 42 U.S.C. §§501-504, provides payments to the states to finance the administration of their unemployment compensation laws. A state is eligible to receive payments only after the Secretary of Labor certifies that its laws meet certain federal requirements, including that:

> the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act [26 U.S.C.A. § 3301 et seq.], includes provision for--(1) Such methods of administration…as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation *when due*….

42 U.S.C. § 503(a)(1) (emphasis added). This section of the Social Security Act ("SSA") is otherwise known as the "when due" provision. The federal regulation interpreting the "when due" provision requires that state unemployment compensation laws provide for "such methods of administration as will reasonably insure the full payment of unemployment benefits to eligible claimants with the greatest promptness that is administratively feasible." 20 C.F.R. §640.3(a).

Providing compensation to an unemployed worker as promptly as administratively possible "accomplishes the congressional purposes of avoiding resort to welfare and stabilizing consumer demands; delaying compensation until months have elapsed defeats these purposes." *California Dept. of Human Resources Development v. Java*, 402 U.S. 121, 133 (1971).

> The Court in Java made clear that the "payment when due" requirement has crucial significance to the administration of unemployment compensation. Chief Justice Burger for a unanimous Court held that the basic aim of the Unemployment Compensation Act is to make payments available "precisely on the nearest payday following the termination" as is administratively feasible.

*Burtton v. Johnson,* 538 F.2d 765, 768 (7th Cir. 1976) (*citing Java,* 402 U.S. at 130).

"The basic thrust of the statutory 'when due' requirement is timeliness." *Fusari v. Steinberg*, 419 U.S. 379, 387-88 (1975) (*citing*, *Java*, 402 U.S. 121).  In *Fusari*, the Connecticut

legislature had enacted substantial amendments to the unemployment statute at issue designed to remedy procedural inadequacies found by the district court.  Central among these reforms were new procedures calculated to reduce the period of deprivation of benefits tolerated under the prior schema.  Accordingly, the Court remanded in light of these intervening statutory changes. *Fusari*, 419 U.S. at 390.  Despite its restricted review, the *Fusari* Court determined that the previous Connecticut system often "failed to deliver benefits in a timely manner." *Id*., 419 U.S. at 388.  The district court had expressed serious reservations as to whether the system satisfied the "when due" requirement based on a record which indicated that during a typical month, the average time to obtain administrative review was 126 days. *Id*., 419 U.S. at 384. *See also, Zynda v. Arwood*, 175 F. Supp. 3d 791, 812, (E.D. Mich. 2016) (denying Defendants' motion to dismiss, *inter alia*, Plaintiffs' § 1983 claims arising under the "when due" clause pursuant to the Court's decision in *Java,* in a case challenging Michigan's administration of its unemployment fraud detection program); *Dunn v. New York State Dept. of Labor*, 1994 U.S. Dist. LEXIS 1512, *10-12 (S.D.N.Y 1994) (finding that the NYSDOL may have violated the statutory requirement of generating decisions "when due" pursuant to 42 U.S.C. § 503(a)(1) because its performance fell seriously short of the level suggested by the USDOL); *Wilkinson v. Abrams*, 81 F.R.D. 52, 56 (E.D. Pa. 1978) (unreasonable delays in scheduling hearings and making disbursements to eligible applicants violates the language and purpose of the Social Security Act).

In *Burtton v. Johnson*, 538 F.2d 765 (7th Cir. 1976), the court construed recently enacted federal regulations to require issuance of unemployment benefits to be made within 14 days of the end of the first compensable week in order to comply with the "when due" provision.  *Id.*, 538 F.2d at 769.  Hearing testimony revealed that delays in initial payment of benefits of two months or more were caused in part by investigations into wage information that did not exist in

the agency's records. The administrative agency in *Burtton* required Illinois employers to file regular reports containing wage information and applicability of the act to their employees. However, a significant number of employers did not file timely reports or, if filed, made reports containing incorrect information. *Id*., 538 F.2d at 769. While the record already provided clear evidence that the plaintiffs should be entitled to preliminary and permanent injunctive relief, the court remanded the proceeding to the lower court for an evidentiary hearing to determine the reasons for the agency's "massive" delays, noting: "[i]t is the state's burden, since it has the information at hand, to detail the causes of delay both in the area of initial payments and in the area of payment of continuing claims." *Id*., 538 F.2d at 769-70.  *See also, Brown v. Giuliani*, 158 F.R.D. 251, 266-67 (E.D.N.Y. 1994) (granting preliminary injunction directing the New York State and City welfare agencies to process applications for benefits in a timely manner in accordance with the periods mandated by applicable federal law).

1.   **The DOL's Failure to Require App -Based FHV Companies to Report Their Drivers' Earnings as Wages Earned in Employment Significantly Delays the Issuance of Benefits in Violation of the "When Due" Clause**

Defendants' failure to classify Plaintiffs and other Uber and Lyft drivers as employees, in defiance of settled New York law, significantly delays their receipt of UI benefits in violation of the "when due" clause.  Defendants do not require app-based FHV companies to report their drivers' earnings despite having found them to be employers under the UI law.  In so doing, Defendant DOL not only violates the Social Security Act, but also disregards its own controlling precedent.

In July 2018, The UIAB issued a final ruling determining that Uber drivers and similarly situated individuals were employees for the purposes of unemployment benefits. *In the Matter of*

*Uber Technologies, Inc.,* Appeal Board No. 596722-596727 (July 12, 2018).[2]  Because all New

York City Uber drivers operate pursuant to the same uniform contracts, terms and policies, the

Appeal Board's finding of employee status for the individual claimants at issue and "those

similarly employed" extends to all drivers in New York City earning wages by driving for Uber.[3]

In a recent decision, the New York Court of Appeals held that Postmates, an app-based

delivery company which imposes working conditions similar to those of Uber, Lyft, and other

app-based FHV companies, was liable for unemployment insurance contributions.  *Matter of*

*Vega (Postmates)*, 2020 NY Slip Op 02094, 2020 N.Y. LEXIS 655 (March 26, 2020).  The Court

of Appeals found that the record contained substantial evidence to support the UIAB's

determination that "Postmates exercised control over its couriers sufficient to render them

employees rather than independent contractors."  *Id.*, 2020 N.Y. LEXIS 655 at *6.  Notably, the

record in the Uber UIAB cases contains far more indicia of control than was present in *Vega*.

For example, among facts indicating a higher level of control exercised by Uber, the UIAB's

decision and the record noted that, *inter alia*, Uber required drivers to take, "the most efficient

route or risk a complaint and/or deduction in pay;" that Uber monitored drivers' braking and

---

[2] Although Uber filed a notice of appeal, it ultimately withdrew, claiming that it did not want to appeal that specific case anymore, but hoped to appeal other unemployment cases in the future. As a result, the UIAB's decision stands as a final determination of law, and represents the final and uncontested position of New York State on the eligibility of Uber drivers for UI. N.Y. Labor Law § 623(1).

[3] All Uber drivers within Uber's New York City market are subject to uniform terms and policies, as Uber has acknowledged in its filings to the National Labor Relations Board. *See*, Uber NLRB Position Statement, 29-RC-184415 (Sep. 27, 2016), attached as Appendix H to the Complaint, at Exhibit D, pp. 10-11 (stating that all of Uber's New York City drivers "are governed by similar terms and conditions for using the Uber app as defined by Uber's Service Agreement.")  A more recent example of Uber's uniformly applied policies in the New York City market is its recent policy to begin restricting driver hours based on a rubric of the drivers' star rating on a scale from 1-5, and the amount of trips the driver has recently performed.  *See*, *Important Changes to Driving in New York City* (website), https://www.uber.com/blog/new-york-city/tlc-rule-changes/ (Sep. 12, 2019), attached as Appendix I to the Complaint (Date accessed May 18, 2020) (Describing the new scheduling policy as "apply[ing] to all TLC-licensed drivers who complete trips with Uber in NYC," with the exception of drivers of wheelchair-accessible vehicles, and setting forward uniform times for drivers to sign up for scheduled blocks of working time, depending on their rating and number of recent trips).

acceleration rates through the app and that such data would be used to verify consumer complaints; that Uber managed staff who "utilize Driver data points 'to monitor driver behavior and ensure efficiency.'" *See* UIAB Nos. 596722-596727.  Taken together, the UIAB's determination that Uber is the employer of its drivers and the Court of Appeals' holding that Postmates is the employer of its couriers signals the resolution of any controversy as to the employment status of app-based workers in New York.

Nevertheless, to date, Defendants have not required Uber or other similar app-based FHV companies to report drivers' wages to the state as required by statute.  *See* Noam Scheiber, *Drivers Say Uber and Lyft Are Blocking Unemployment Pay*, NEW YORK TIMES, March 24, 2020, *available at* https://www.nytimes.com/2020/03/24/business/economy/coronavirus-uber-lyft-drivers-unemployment.html. (Date accessed: May 18, 2020).  Similar to *Burtton*, *supra*, Defendants' failure to compel the collection of wage reporting information from these employers has caused unconscionable delays in the processing and payment of necessary benefits to Plaintiffs and similar claimants.  Instead of receiving UI benefits within two to three weeks of applying like other claimants, drivers are forced to prove their individual employment status in a complicated bureaucratic process that can take months to resolve — resulting in drivers waiting months to receive benefits. *See* Scheiber*, supra*.  Defendants' inaction thus denies Plaintiffs UI benefits "when due."  Defendants cannot provide sound reasoning for delaying benefits to claimants who have been determined to be employees.

Plaintiffs can demonstrate that DOL's procedure for processing UI claims for app-based drivers, requiring the claimants to self-report their earnings through a cumbersome reconsideration process, results in non-receipt of benefit or delays that would not occur but for the DOL's failure to require app-based companies to report their drivers' earnings.  Claimants

with combined income from other employment reported on a W-2 and misclassified work

reported on a 1099 receive a monetary benefit determination showing their qualifying earnings

specifically for the W-2 income in accordance with DOL's procedures for determining claimant

eligibility.  If the claimant meets all other requirements for UI eligibility, the claimant will begin

receiving benefits exclusively based on the W-2 income.  However, benefits for the 1099 income

are not included unless and until the claimant requests a reconsideration from the DOL.

For example, Plaintiff Abdul Rumon filed for UI benefits on March 20, 2020 with a

combination of W-2 wages and 1099 wages from Uber and Lyft. Compl. ¶132-135.

While Mr. Rumon had earned most of his income as an app-based driver, he had also worked in

the summers at a Subway restaurant, for which he was paid as an employee. Id at ¶134.

 After completing his application over the phone with a DOL agent, Mr. Rumon faxed his 1099

to DOL.  Id. at Compl. ¶138-140. On April 9, Mr. Rumon received his first benefit payment at a

weekly benefit rate of only $155. Id. at Compl. ¶142. On or about April 10, Mr. Rumon received

his monetary benefit determination from the DOL, which only showed wages earned from

Subway, and did not show any earnings for his primary employment with Uber and Lyft. Compl.

¶143.

Thus, Plaintiffs can show that DOL's failure to require app-based companies to report the

earnings of their drivers delays the issuance of benefits. As such, Plaintiffs have *demonstrated a*

*clear likelihood of succeeding on the merits and the Court should grant Plaintiffs'* request for a

preliminary injunction.

> **2.  DOL's Misclassification of App-Based Drivers in Defiance of Settled Law By Instructing Them to Apply for Pandemic Unemployment Assistance Prevents Claimants from Receiving Full Benefits When Due**

On April 20, 2020, the DOL issued guidelines instructing "gig workers" to apply for

Pandemic Unemployment Assistance ("PUA").  *Pandemic Unemployment Assistance* (website),

*available at* https://www.labor.ny.gov/ui/pdfs/pua-factsheet.pdf (Date Accessed: May 15, 2020).

DOL's guidelines effectively ignore UIAB precedent by continuing to treat Plaintiffs and other

app-based drivers as independent contractors.[4]  Moreover, steering all such workers to the PUA

application denies those individuals the full benefits to which they are entitled because benefits

paid under PUA are calculated differently from state UI benefits.  PUA benefits are based on the

claimant's net income whereas UI benefits are calculated based on the claimant's gross income.

N.Y. Labor Law § 518; U.I. Claimant's Handbook at 18, 20 (UI WBR to be calculated based on

all remuneration or "gross" pay); 20 C.F.R. §625.6(a)(2); U.S. Department of Labor

Unemployment Insurance Program Letter No. 16-20 Change 1 (April 27, 2020) (Hereafter,

"April 27 PUA Guidance").

By instructing so-called gig workers to apply for PUA, Defendant DOL fails to deliver

benefits in a timely manner.  *See Fusari, supra*.  Although PUA applicants with 1099 income

may eventually receive *some* benefits, such claimants will still suffer an injury in that they are

eligible for a higher benefit rate which they cannot access due to DOL's failure to properly

classify workers for app-based companies.  Further, routing claimants to PUA when they are

eligible for state UI violates federal law.  20 C.F.R. § 625.4(i).  Thus, app-based driver claimants

lose the difference between benefits paid under the UI application with a gross income

calculation and the benefits paid under PUA with a net income calculation.  For example,

Plaintiff Ouattara would receive a weekly benefit of $504 for UI but only $248 for PUA, losing

---

[4] Under the Section titled "Who Should Apply," the DOL lists gig workers with classes of workers who would otherwise not be eligible for UI such as independent contractors, self-employed New Yorkers, farmers, those with insufficient work history and New Yorkers otherwise not qualified for regular or extended UI benefits and affected by COVID-19.

approximately $256 per week in benefits.  Compl. ¶125.  Until DOL issues the full benefits to which Plaintiffs are entitled, DOL is violating the basic thrust of the "when due" clause of the SSA by failing to make timely payments.  *See Fusari*, 419 U.S. at 387-88.

### B.  Defendants' Differential Enforcement Of The Labor Laws Violates The Equal Protection Clause Of The Fourteenth Amendment

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'"  *Plyler v. Doe,* 457 U.S. 202, 216 (1982) (*citation omitted*).  "Where an alleged violation of that mandate is not based on race, gender, religion, natural origin, or alienage, no equal protection violation will be found if the unequal treatment was rationally related to a legitimate State interest."  *Dominici v. Lentini,* 24 Fed. Appx. 86, 89 (2d Cir. 2001) (*citing City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).  Under rational basis review, the government's policy "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis" for the distinctions it draws.  *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (*quoting F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  However, "while rational basis review is indulgent and respectful, it is not meant to be 'toothless.'"  *Windsor v. United States,* 699 F.3d 169, 180 (2d Cir. 2012) (*citations omitted*).

Defendant DOL can assert no rational basis for its differential enforcement of New York's wage reporting laws as to app-based employers.  All New York State employers must report earnings to Defendants and file wage reporting information on a quarterly basis.  N.Y. Tax Law § 674(a)(4)(A), N.Y. Labor Law § 575(1), 12 N.Y.C.R.R. §§ 472.2, 472.3(c).  Moreover, where Defendant DOL requests access to an employer's payroll records, refusal to provide access is a misdemeanor.  N.Y. Labor Law § 634.  However, Defendants have failed to enforce wage reporting laws against app-based FHV companies.  As a result of DOL's

19

differential enforcement, Individual Plaintiffs and similarly situated drivers face months of delay after completing their initial applications for unemployment benefits since the DOL does not have their wage information on hand.

Furthermore, DOL's refusal to enforce the labor laws undermines its own stated interest in expediting the processing of UI claims.  In an April 20, 2020 directive, Defendant Roberta Reardon calls on New York State employers to comply with 12 N.Y.C.R.R. § 472.8, requiring employers to provide certain information to employees to help them promptly complete the unemployment insurance benefits application.  *See Audio & Rush Transcript: NYS Labor Commissioner Reardon Announces Directive Requiring Employers to Provide Information New Yorkers Need to Apply for Unemployment Benefits* (April 20, 2020) *available at* https://www.labor.ny.gov/pressreleases/2020/april-29-2020.shtm.  In her statement, Reardon attributes the delay in processing "partial" claims to the fact that employers have failed to provide employees with the necessary federal employment identification number.  In order to complete the application, a DOL representative must allegedly initiate a phone call to the claimant, "which significantly slows down the application process." *Id.*  Reardon's statement demonstrates that the DOL can take steps to enforce legislation when doing so may increase the rate at which claims are processed.  Defendants' refusal to enforce the Labor Law and their own regulations by directing Uber, Lyft and other app-based FHV companies to report wage information is irrational and contrary to DOL's interest in reducing claims processing time.

Moreover, the DOL is flouting not only its statutory mandate but settled law as well.  The DOL has failed to determine app-based drivers to be monetarily eligible despite caselaw holding that Uber drivers and all similarly situated drivers are to be treated as employees for purpose of unemployment benefits.  *See* Unemployment Insurance Appeal Board Nos. 596722-596727 (Jul.

12, 2018).  Plaintiffs anticipate that Defendants may argue that the UIAB's decisions regarding Uber and Lyft apply only to the individual claimants involved, and those similarly situated at the time those decisions were issued; as facts may change over time, a new assessment of employment status is required before Uber and Lyft can be found liable for contributions for current claims.  However, such an argument would effectively concede that the UI law applies only to those employers who voluntarily comply with it, and signal that no company that wishes to challenge employee status repeatedly will ever be held accountable for prospective compliance with wage reporting laws, even after exhausting all appeals, because they can simply bring another virtually identical challenge at a later date.  If this were the case, the UI law simply could not function.

DOL's current policy as to app-based FHV employers stands in stark contrast to statements made by Defendant Governor Andrew Cuomo in his January 8, 2020 State of the State address.  Governor Cuomo dedicated a portion of his speech to acknowledging the growing so-called "gig economy."  *Remarks as Prepared: Governor Cuomo Outlines 2020 Agenda: Making Progress Happen*, (2020) available at: https://www.governor.ny.gov/news/remarks-prepared-governor-cuomo-outlines-2020-agenda-making-progress-happen.  In his remarks, Cuomo unambiguously states that app-based drivers are not independent contractors:

> This year more than 40% of the workforce will be in jobs related to the new Gig Economy - an economy which has spurred growth and many innovations, but which excludes many workers from the progress of fair pay and benefits. Too many corporations are increasing their profits at the expense of the employee and the taxpayer. That must end. A driver is not an independent contractor simply because she drives her own car on the job…. It is exploitive, abusive, it's a scam, it's a fraud, it must stop and it has to stop here and now.

*Id*. at minute marks 51:54; 52:25.

Cuomo's statement concerning gig economy drivers demonstrates an interest in immediately protecting drivers from economic exploitation at the hands of Uber, Lyft and other FHV companies.  However, Defendants' continuing failure to follow their own precedent only serves to further any such exploitation.  There is no rational government interest in an agency's flouting of its statutory mandate and settled law.  Accordingly, Defendants' continued failure to enforce wage reporting requirements against such employers and consequent failure to pay benefits in a timely manner, despite controlling case law, denies Plaintiffs equal protection of the laws.

## III.   THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST SUPPORT GRANTING A PRELIMINARY INJUNCTION

In assessing the balance of equities, "the court must 'balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,' as well as 'the public consequences in employing the extraordinary remedy of injunction.'" *Make the Road New York v. Cuccinelli*, 419 F. Supp. 3d 647, 655 (S.D.N.Y. 2019) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)).  The foregoing demonstrates that Plaintiffs are threatened with irreparable harm and are clearly likely to prevail on the merits.  However, even if this were not the case, the balance of hardships which would result in granting injunctive relief tips decidedly in Plaintiffs' favor.  Moreover, "because the Government is a party, and 'the Government's interest *is* the public interest,' the balance of hardships and public interest merge as one factor." *Saget v. Trump*, 375 F. Supp. 3d 280, 339-40 (E.D.N.Y. 2019), (*quoting New York v. U.S. Dep't. of Commerce*, 351 F. Supp. 3d 502, 673 (S.D.N.Y. 2019)) (*internal quotation marks omitted*).

Defendants' actions have already resulted in an inexcusable delay of over two months in payment of UI benefits to Plaintiffs and similarly situated app-based drivers.  As Plaintiffs

continue to wait for the issuance of benefits, their catastrophic financial losses only worsen, leaving Plaintiffs with no ability to pay for basic necessities.  If allowed to continue, Defendants' actions will only drive Plaintiffs and their families further into financial ruin and emotional distress in addition to depriving tens of thousands of app-based drivers from receiving UI benefits to which they are legally entitled.

The balance of hardships tips decidedly in favor of Plaintiffs.  If preliminary relief is granted, Defendants will be tasked with adopting a methodology that allows for the payment of UI benefits to Plaintiffs within a reasonable time, thus allowing Plaintiffs basic financial stability in accordance with the intent of the SSA.  *See Java*, 402 U.S. at 132.  Defendants will incur no costs to pay benefits and should have little difficulty remedying the problem that they have created.  Any hardship to Defendants that may result from an injunction preventing further flouting of their legal requirement to pay benefits when due is minimal in comparison to the irreparable harm that Plaintiffs will face if they do not receive UI benefits.  Defendants have demonstrated that they are capable of enforcing labor laws aimed at expediting the processing of UI claims.  Moreover, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations."  *New York v. U.S. Dep't. of Commerce*, 351 F. Supp. 3d at 676 (*citation omitted*).

Indeed, as "the perpetuation of unlawful agency action is not in the public interest," Defendants have no cognizable interest in refusing to pay benefits to Plaintiffs when due.  *See Saget,* 375 F. Supp. 3d at 377.  Accordingly, Plaintiffs have established that the balance of the equities tips decidedly in favor of granting injunctive relief.

23

## CONCLUSION

For all the above reasons, the Court should grant the relief requested in Plaintiffs'

motion for a preliminary injunction.

Dated: May 28, 2020
Brooklyn, NY

Respectfully submitted,

*Nicole Salk*

BROOKLYN LEGAL SERVICES
Nicole Salk
Sarah E. Dranoff
Udoka Odoemene
105 Court Street, 3rd floor
Brooklyn, NY  11201
(718) 237-5544
Attorneys for Plaintiffs

*Zubin Soleimany*

ZUBIN SOLEIMANY, Esq.
New York Taxi Workers Alliance
31-10 37th Ave. Ste. 300
Long Island City, NY 11101
(718) 706-9892
Attorney for Plaintiffs