UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MD ISLAM, DOH OUATTARA, ABDUL RUMON,
HARNEK SINGH, and NEW YORK TAXI
WORKERS ALLIANCE,

*Plaintiffs*,

-against-

20-CV-2328
LDH/CLP

ANDREW CUOMO, GOVERNOR OF THE STATE
OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF LABOR, and ROBERTA
REARDON, as COMMISSIONER OF LABOR,

*Defendants*.

---

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendant
The Capitol
Albany, New York  12224-0341

C. Harris Dague
Assistant Attorney General
Telephone: (518) 776-2621
Email: harris.dague@ag.ny.gov

Date: June 17, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF MATERIAL FACTS ................................................................................. 3

STANDARD OF REVIEW ....................................................................................................... 6

ARGUMENT ................................................................................................................................ 7

POINT I .......................................................................................................................................... 7
PLAINTIFFS' MANDATORY INJUNCTION SEEKS FINAL RELIEF ......................... 7

POINT II ......................................................................................................................................... 8
PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM .............................. 8

A.   The Individual Plaintiffs Are Not at Risk of  Irreparable Harm ...................................... 8

B.   The Organizational Plaintiff Does Not Articulate Irreparable Harm ........................... 11

POINT III ...................................................................................................................................... 13
PLAINTIFFS CANNOT ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS
ON THE MERITS ..................................................................................................................... 13

A.   The Complaint is Not Ripe as Plaintiffs Have Pending Administrative Appeal
Remedies and There is No Final Decision ............................................................................. 13

B.   Plaintiffs' Claim Under the SSA's "When Due" Clause is Not Likely To Succeed ...... 15

C.   Plaintiffs Were Not Misclassified into PUA and Their Receipt of Benefits Under PUA
Does Not Violate "When Due" by Delaying UI Benefits .................................................... 16

POINT IV ...................................................................................................................................... 23
THE BALANCE OF THE EQUITIES FAVORS DENIAL OF THE INJUNCTION ........ 23

POINT V ....................................................................................................................................... 24
DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY FOR
SOME OF PLAINTIFFS' CLAIMS ....................................................................................... 24

CONCLUSION ............................................................................................................................ 25

**TABLE OF CASES**

| Case Name | Page |
|---|---|
| Abbott Labs. v. Adelphia Supply USA, No. 15 CV 5826, 2015 WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015) | 6 |
| Abbott Labs. v. H&H Wholesale Servs., Inc., 670 Fed. Appx. 6 (2d Cir. 2016) | 6 |
| Barchha v. Tapimmune Inc., 2013 U.S. Dist. LEXIS 4687, at *6-7 (S.D.N.Y. Jan. 7, 2013) | 7 |
| Bernardino v. Barnes & Noble Booksellers, Inc., 2017 U.S. Dist. LEXIS 129038, at *27 (S.D.N.Y. Aug. 11, 2017) | 23, 24 |
| Brown v. N.Y.C. Health & Hosps. Corp. Emergency Med. Serv., 1996 U.S. Dist. LEXIS 22451, at *7-8 (E.D.N.Y. Feb. 5, 1996) | 10 |
| Cal. Dep't of Human Res. v. Java, 402 U.S. 121 (1971) | 15 |
| Carribean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) | 11 |
| Centro de la Comunidad Hispana De Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109-110 (2d Cir. 2017) | 12 |
| CF 135 Flat LLC v. Triadou SPV N.A., 2016 U.S. Dist. LEXIS 82821 (S.D.N.Y. June 24, 2016) | 7 |
| City of Newburgh v. Sarna, 690 F. Supp. 2d 136, 164 (S.D.N.Y. 2010) | 8 |
| County View Estates Ridge LLC, 452 F. Supp. 2d 142, 149 (2d Cir. 2006) | 13 |
| Ctr. for Food Safety v. Vilsack, 636 F.3d 1166, 1171 n. 6 (9th Cir. 2011) | 11 |
| Dunn v. N.Y. State Dep't of Labor, 474 F. Supp. 269, 273 (S.D.N.Y. 1979) | 15 |
| Edelman v. Jordan, 415 U.S. 651, 653, (1974) | 23 |
| Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) | 8 |
| Graphic Communications Union v. Chicago Tribune Co., 779 F.2d 13, 15 (7th Cir. 1985) | 11 |

| | |
|---|---|
| Great Lakes Dredge & Dock Co. v. Ludwig, 486 F. Supp. 1305, 1308 (W.D.N.Y. 1980) | 11, 12 |
| Hennelly v. Town of Middletown, 2010 U.S. Dist. LEXIS 114703, at *5 (N.D.N.Y. Oct. 28, 2010) | 13 |
| Iacono v. Town Bd. of E. Hampton, 2006 U.S. Dist. LEXIS 113422, at *22 (E.D.N.Y. Sep. 18, 2006) | 22 |
| John Gil Constr., Inc. v. Riverso, 72 F. Supp. 2d 242, 249 (S.D.N.Y. 1999) | 13 |
| JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990) | 8 |
| Kebapci v. Tune Core, Inc., 2016 U.S. Dist. LEXIS 159054, at *7 (E.D.N.Y. Nov. 11, 2016) | 8, 9 |
| Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986) | 6 |
| Nnebe v. Daus 644 F.3d 147, 156 (2d Cir. 2011) | 12 |
| N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth., 684 F.3d 286, 294 (2d Cir. 2012) | 7 |
| North American Soccer League, LLC v. United States Soccer Federation, Inc., 883 F.3d 32, 37 (2d Cir. 2018) | 6 |
| NRDC v. United States FDA, 884 F. Supp. 2d 108, 124 (S.D.N.Y. 2012) | 11 |
| Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) | 23 |
| Salix v. United States Forest Serv., 944 F. Supp. 2d 984, 1002 (D. Mont. 2013) | 11 |
| Shays v. Fec, 340 F. Supp. 2d 39, 48 (D.D.C. 2004) | 11 |
| Smith v. Fredrico, 2012 U.S. Dist. LEXIS 184193, at *10 (E.D.N.Y. Nov. 20, 2012) | 12 |
| Smith v. Judges, 2017 U.S. Dist. LEXIS 141358, at *8 (D. Conn. Mar. 23, 2017) | 13 |
| Telesford v. Tamer, 2016 U.S. Dist. LEXIS 118374, at *20 (N.D.N.Y. Aug. 13, 2016) | 23 |
| Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) | 6, 7, 13 |

| | |
|---|---|
| United States v. Quinones, 313 F.3d 49, 58 (2d Cir. 2002) | 13 |
| Vt. Coal. for Cmty. Schs, Inc. v. Harwood Unified Union Sch. Dist., 2020 U.S. Dist. LEXIS 21632, at *9 (D. Vt. Jan. 31, 2020) | 12, 13 |
| Wallace v. New York, 40 F. Supp. 3d 278, 303-05 (E.D.N.Y. 2014) | 22 |
| Walker v. Comm'r of the NYS Dep't of Labor & Unemployment, 2015 U.S. Dist. LEXIS 2307, at *15 (E.D.N.Y. Jan. 8, 2015) (Gleeson, J.) | 10, 13 |
| Zelotes v. Adams, 667 (D. Conn. 2007) rev'd on other grounds 606 F.3d 34 (2d Cir. 2010) | 7 |

## TABLE OF AUTHORITIES

| State Statutes & Regulations | Page |
|---|---|
| Labor Law § 597(2)(b) | 6, 14, 21 |
| Labor Law § 590(5) | 9 |
| Labor Law § 620 | 14 |
| Labor Law § 621 | 14 |
| Labor Law §624 | 14 |
| Labor Law §590(5) | 15 |
| Labor Law §571 | 21 |
| Labor Law §575-a | 21 |
| Labor Law §597 | 21 |
| Tax Law §674(a)(4) | 21 |
| 12 NYCRR §463.6 | 14 |
| Federal Statutes and Regulations | Page |
| 42 U.S.C. §§ 503(a)(1) [Social Security Act] | 10 |
| 42 U.S.C and 503(a)(3) [Social Security Act] | 10 |
| 42 U.S.C. §§ 501-504 | 15 |
| 42 USC § 1983 | 24 |
| 20 C.F.R. § 640.3(a) | 15 |
| 20 C.F.R. Pt. 650 | 10 |
| 20 C.F.R § 625.2(n) | 15 |
| CARES Act, Public Law No. 116-136 § 2102 | 6, 18, 19, 20 |

Defendants, the New York State Department of Labor ("DOL"), Governor Andrew M. Cuomo, and DOL Commissioner Roberta Reardon (collectively "Defendants"), respectfully submit this memorandum of law, the accompanying Declaration of Laura Campion ("Campion Decl."), John Dougherty ("Dougherty Decl."), Yvonne Martinez ("Martinez Decl."), and Diane Taylor ("Taylor Decl."), and all attached exhibits, in opposition to Plaintiffs' Motion for a Preliminary Injunction ("PI") [Dkt. 7].

## PRELIMINARY STATEMENT

This matter is not properly before this Court:  All four Plaintiffs are currently receiving some form of unemployment insurance, in amounts greater than those received by previous recipients due to additional federal funding; the claims being pursued by Plaintiffs here are being addressed in the administrative appeals Plaintiffs have filed with DOL; and Plaintiffs cannot point to any wrongdoing by any of the Defendants that warrants judicial review.

Plaintiffs, four drivers for app-based For-Hire Vehicle ("FHV") service companies who stopped working due to the COVID-19 pandemic, seek a mandatory PI providing them benefits under the New York unemployment insurance ("UI") program. As of the date of this filing, all four Plaintiffs are receiving benefits under either UI or the federal Pandemic Unemployment Assistance ("PUA") program. In addition to their weekly UI/PUA benefits, all of the Plaintiffs are receiving $600 a week under the Federal Pandemic Unemployment Compensation program ("FPUC")—bringing their weekly benefits to a rate well above the maximum $504 that UI claimants receive under normal circumstances. Moreover, Plaintiffs' claims regarding the amount of their weekly UI/PUA benefits and/or their receipt of PUA benefits (as opposed to UI) are being

addressed in administrative appeals that are pending with DOL.[1] Through these appeals, Plaintiffs, if successful, can be made entirely whole—either by obtaining the total amount of benefits they claim they are entitled to, or by having benefits reclassified from PUA to UI.

Plaintiffs' Complaint and application for a PI are based on two misapprehensions. First, three of the Plaintiffs contend that they were misclassified into the PUA program and should be getting benefits under UI. Dkt. 7-5. Pursuant to the federal guidance on the PUA program, however, "gig workers" may receive benefits under PUA as "driver[s] for a ridesharing service who [were] forced to suspend operations as a direct result of the COVID-19 public health emergency." Campion Decl. Ex. A. Plaintiffs are undeniably "gig workers" whose sole cause of unemployment is the COVID-19 pandemic. Thus, DOL properly determined that they were entitled to benefits under the PUA program.  In any event, the amount of benefits available to Plaintiffs through the PUA program are exactly the same as the benefits available through the UI program—and one Plaintiff has already received the statutory maximum, and cannot receive any more money. Taylor Decl. ¶ 22.

Second, Plaintiffs seek relief that is beyond DOL's authority to provide. They fault DOL for failing to compel the FHV service companies to submit wage-earning records to the New York State Department of Tax and Finance under labor law. The statutes cited by Plaintiffs do not give DOL the legal authority to compel the production of wage-earning records from private companies. DOL's initial finding that Plaintiffs were ineligible for UI was consistent with DOL's treatment of all workers, regardless of field, whose companies do not provide wage information.

Plaintiffs do not satisfy the elements necessary to obtain the extraordinary relief of a

---

[1] While characterized as the "administrative appeal process" throughout this memorandum, this term contemplates any portion of the administrative review process available at DOL, including requests for reconsideration, requests for hearings before an Administrative Law Judge, and appeals to the Unemployment Insurance Appeal Board ("UAIB"). Taylor Decl. ¶¶ 25-29; Campion Decl. ¶¶ 14-19.

mandatory injunction.

First, they cannot establish irreparable harm, as they are currently receiving unemployment benefits; they are in the midst of administrative appeal processes that can make them whole; and they seek only monetary relief, which is fully compensable by an award of damages.

Second, Plaintiffs cannot demonstrate a likelihood of success on the merits. Their claims are not ripe for adjudication in light of the pending appeals; they are all receiving PUA or UI benefits to which they are entitled; their receipt of timely benefits under PUA or UI and FPUC undercuts their novel claims under the "when due" clause of the federal Social Security Act ("SSA"); and their arguments are premised on a misunderstanding of the labor laws, which do not give DOL the power to compel production of wage information from third parties.

Third, Plaintiffs' requested relief is against public policy that does not favor granting special treatment to one group of workers to the detriment of all others—especially in light of these extraordinary times, during which DOL is processing an unprecedented volume of claims. In the face of millions of New Yorkers seeking unemployment benefits, Plaintiffs are looking for relief through both their pending administrative appeals and this federal court action, simultaneously.

DOL has been working non-stop to assist all New Yorkers, including Plaintiffs, in obtaining the appropriate type and level of unemployment benefits to which they are entitled, and to provide a timely appeal process for workers to challenge benefit determinations. This process has worked well here: Plaintiffs are receiving significant benefits, which, in light of FPUC payments, are higher than the maximum UI benefits provided in New York State, and they have availed themselves of DOL's appeal process to address the issues being pursued here.

## STATEMENT OF MATERIAL FACTS

The facts relevant to Plaintiffs' application for a preliminary injunction are straightforward

and uncontested. In the interest of judicial economy, Defendants will provide a summary of only the most pertinent facts and respectfully refer the Court to the annexed Declarations for a more detailed overview.

<u>DOL Response to COVID-19</u>

Since the onset of the COVID-19 pandemic, DOL has made extraordinary efforts to pay all unemployed New Yorkers the benefits to which they are entitled. Martinez Decl. ¶¶ 9-13. In just 90 days, from March 14-June 6, 2020, DOL approved 2.7 million initial UI claims—a 1,297% increase from the same period in 2019. <u>Id</u>. ¶¶2-3. In this same period, DOL received and processed more than 800,000 PUA claims and paid out over $1.5 billion in PUA benefits—and $21 billion in total unemployment benefits. <u>Id</u>. ¶ 8. This is about 10 times the total amount DOL paid out in all of 2019. Before the pandemic, DOL received an average of 50,000 calls per week. <u>Id</u>. ¶ 7. During the pandemic, call volume peaked at over 2 million calls per day and 8.2 million in a week. Similarly, DOL's UI filing system saw a 16,000% increase in phone calls and 1,600% increase in web traffic compared to typical weeks. <u>Id</u>. ¶ 12.

To meet the unprecedented demand and ensure that every worker's claim is processed quickly and correctly, DOL tripled its staff working on UI claims from 400 to 1,170 employees, made a twelve-fold increase in the number of computer servers, and logged over 239,000 additional employee hours more in April 2020 than in April 2019. Dougherty Decl. ¶ 4.

<u>Individual Plaintiffs' Benefits</u>

All four individual Plaintiffs are currently receiving unemployment benefits under either UI or PUA. Taylor Decl. ¶¶ 21-24. DOL approved Plaintiff Islam for PUA on or about May 21, 2020 at a benefit rate of $291/week. <u>Id</u>. ¶ 22. By May 28, 2020, he received back payments to the date he qualified for PUA. <u>Id</u>. On or about June 10, 2020, DOL adjusted his PUA rate to

4

$504/week, the maximum rate available in New York for UI and PUA. Id. In addition to his weekly rate, like all Plaintiffs, Plaintiff Islam also receives $600/week in FPUC payments. Id. In total, he is currently receiving $1,104/week in benefits, the statutory maximum. Id.

DOL approved Plaintiff Singh for PUA on May 27, 2020 with a benefit rate of $182/week and adjusted his rate to $347/week on or about May 27, 2020. Id. ¶ 23. On June 5, 2020, he received back payments to the date he qualified for PUA. Id. In total, Plaintiff Singh receives $947/week in benefits, inclusive of FPUC. Id.

DOL approved Plaintiff Ouattara for PUA on May 22, 2020 with a benefit rate of $182/week. Id. ¶24. By May 26, 2020, he received back payments to the date he qualified for PUA. Id. In total, Plaintiff Ouattara receives $782/week in benefits, inclusive of FPUC. Id.

DOL approved Plaintiff Rumon for UI on April 6, 2020 with a benefit rate of $155/week. By April 7, 2020, he received back payments to date he qualified for UI. In total, Plaintiff Rumon receives $755/week in benefits, inclusive of FPUC. Id. ¶ 22.

<u>DOL Process For Plaintiffs' Claims</u>

DOL initially deemed Plaintiffs Islam, Ouattara, and Singh ineligible for UI. Id. ¶¶ 3-12, Table A. This decision was automatically generated by DOL systems based exclusively on the failure of their employers to timely submit income data. Id. ¶¶ 8-9. This is the same process applied to all claimants whose employers do not report income data, regardless of job. Campion Decl. ¶¶ 15-16. Similarly, Plaintiff Rumon was approved for UI based solely on his restaurant job income, because the FHV company from which he received income had not provided timely quarterly data. Id. ¶ 21. DOL cannot compel individual employers to file quarterly wage data. Campion Decl. ¶ 24.

After deeming them ineligible for UI, DOL notified Plaintiffs Islam, Ouattara, and Singh

of their administrative appeal rights to challenge their ineligibility. Taylor Decl. ¶¶ 3-12. Plaintiffs Islam and Singh filed for reconsideration of their UI ineligibility. Id. ¶ 12. In fact, as a result of his request for reconsideration, Plaintiff Islam's PUA rate was adjusted to the maximum legal level. Id. ¶ 22. Plaintiff Ouattara has not filed for reconsideration of his UI ineligibility, but he is not foreclosed from doing so. Id. ¶¶ 12, 19. Plaintiff Rumon filed a request for reconsideration to his UI rate, which remains pending. Id. ¶ 12. In addition, any Plaintiff receiving PUA also has the option of separately seeking reconsideration of their PUA rates, but, to date have not done so. Campion Decl. ¶ 15. Regardless, Plaintiff's PUA rates could be addressed based on their UI request for reconsideration, or DOL can accept additional information from claimants and make a new determination of the PUA rate. Labor Law § 597(2)(b).

## PUA Eligibility

Plaintiffs Islam, Ouattara, and Singh were all properly classified for benefits under PUA. Taylor Decl. ¶ 17; Campion Decl. ¶¶ 6-11. PUA provides unemployment benefits to individuals not otherwise eligible for traditional UI who have lost earnings due to COVID-19 and to individuals who normally qualify for UI but voluntarily stop working due to COVID-19. Public Law No. 116-136 § 2102. Plaintiffs all stopped working and applied for unemployment benefits exclusively because of COVID-19. Dkt. 1; Dkt. 7-2; 7-3.

## **STANDARD OF REVIEW**

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986). Because of the extraordinary nature of the relief involved, a plaintiff is required to "carry the burden of persuasion by a clear showing for each factor." Abbott Labs. v. Adelphia Supply USA, No. 15 CV 5826, 2015 WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015), aff'd sub nom Abbott Labs. v. H&H Wholesale Servs., Inc., 670 Fed.

Appx. 6 (2d Cir. 2016). Generally, a plaintiff seeking a preliminary injunction must show: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." <u>North American Soccer League, LLC v. United States Soccer Federation, Inc.</u>, 883 F.3d 32, 37 (2d Cir. 2018).

Where, as here, a plaintiff seeks a mandatory injunction – one that "alter[s] the status quo by commanding some positive act" – a higher standard applies. <u>Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.</u>, 60 F.3d 27, 34 (2d Cir. 1995). Plaintiffs requesting a mandatory injunction must show "a clear or substantial likelihood of success on the merits." <u>N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.</u>, 684 F.3d 286, 294 (2d Cir. 2012). Plaintiffs concede that they are seeking imposition of a mandatory preliminary injunction and are thus subject to a heightened standard. Dkt. 7-5 at 3. For the reasons set forth below, Plaintiffs fail to meet this heightened standard.

## ARGUMENT

### POINT I
### PLAINTIFFS' MANDATORY INJUNCTION SEEKS FINAL RELIEF

In addition to failing to meet the more stringent legal standard for a mandatory injunction, Plaintiffs' request is <u>per se</u> deficient because it seeks relief unavailable by PI. Injunctions are designed solely to provide relief "which is interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness." <u>Barchha v. Tapimmune Inc.</u>, 2013 U.S. Dist. LEXIS 4687, at *6-7 (S.D.N.Y. Jan. 7, 2013). Thus, the court must ensure that a PI does "not grant relief properly awarded only in a final judgment." <u>Id</u>.

Plaintiffs' request for an injunction, if granted, would constitute final relief on the Complaint—rendering all of the underlying claims fully resolved. Plaintiffs seek an injunction

requiring Defendants to: (1) award Plaintiffs and all app-based FHV driver claimants[2] benefits under UI, not PUA; (2) obtain employment records from non-party FHV service companies for all app-based driver claimants; and  (3) create a special "streamlined process" to prospectively handle UI claims for all app-based FHV driver claimants. Dkt. 7. This is the same final relief they seek in the Complaint. Dkt. 1 at Wherefore Clause. Even the declaratory relief sought in the Complaint— a declaration that DOL must treat all app-based FHV driver claimants under UI—would be resolved if the Court were to grant the requested mandatory injunction. Thus, even before weighing the substantive validity of the requested injunction, Plaintiffs' motion should be denied as seeking final relief beyond the purview of a  PI.

## POINT II
## PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM

In this lawsuit, there are two separate categories of Plaintiffs—the four individuals and the organizational party, the New York Taxi Workers Alliance ("NYTWA"). Dkt. 1. Neither the individuals' claims of harm from underpayment of received benefits, nor NYTWA's claim of lost organizational resources constitute legally sufficient irreparable harm to justify the exceptional relief of a mandatory PI.

### A.  The Individual Plaintiffs Are Not at Risk of  Irreparable Harm

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction."  <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d Cir. 2009). The threat of irreparable harm "must not be merely speculative, but actual and

---

[2] Plaintiffs' request for an injunction is also impermissibly broad as it seeks imposition of relief for an entire class of app-based drivers. Courts require injunctive relief to be plead with specificity, "narrowly tailored . . . and no more burdensome than necessary." <u>CF 135 Flat LLC v. Triadou SPV N.A.</u>, 2016 U.S. Dist. LEXIS 82821 (S.D.N.Y. June 24, 2016). It is well-established that "injunctive relief generally should be limited to apply only to named plaintiffs where no class has been certified." <u>Zelotes v. Adams</u>, 667 (D. Conn. 2007) <u>rev'd on other grounds</u> 606 F.3d 34 (2d Cir. 2010). Plaintiffs have not even sought a class here, yet they request class-wide relief.

imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." City of Newburgh v. Sarna, 690 F. Supp. 2d 136, 164 (S.D.N.Y. 2010).

It is well-established that "harm is ordinarily not considered irreparable if it is fully compensable by money damages."  JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990). As such, "it has always been true … that where money damages [are] adequate compensation a preliminary injunction will not issue." Kebapci v. Tune Core, Inc., 2016 U.S. Dist. LEXIS 159054, at *7 (E.D.N.Y. Nov. 11, 2016).

The individual Plaintiffs' claims of harm have been addressed since the filing of the complaint. Two of the Plaintiffs (Islam and Ouattara) claimed that they had not yet received unemployment benefits and that they are irreparably harmed by the resulting fiscal hardship and emotional distress.[3] Dkt. 7-5 at 6-8; Dkt. 7-2, 7-3. Circumstances have changed. As of this writing, all four Plaintiffs are receiving unemployment benefits, under either UI or PUA, and have been paid back pay to the start of the first day they were entitled to receive benefits. Taylor Decl. ¶¶ 21-24. In fact, Plaintiff Islam is now receiving the highest amount of benefits available under New York law – i.e., $504 a week. Id. ¶ 22. Moreover, in addition to receiving their weekly benefit under UI or PUA, all four are also receiving an additional $600 per week under FPUC. Id. ¶¶ 21-24. Under UI, without FPUC in place due to COVID-19, the most any New York worker can be awarded in benefits is $504 per week. Id. ¶ 22; Labor Law § 590(5). Plaintiffs' benefits all currently exceed this rate:

- Plaintiff Islam: Eligible for PUA on May 22, 2020. Receives weekly benefit rate of  $891 [$291 PUA + $600 FPUC]. PUA Rate adjusted as of June 10, 2020 to weekly benefit rate of $1104 [$504 PUA + $600 FPUC] Taylor Decl. ¶ 22.

---

[3] Plaintiffs only submit evidence regarding irreparable harm for Plaintiffs Islam and Ouattara [Dkts. 7-2, 7-3] and appear to argue that they are the only two individual Plaintiffs who are suffering irreparable harm. Dkt. 7-5 at 6-7 ("Plaintiffs Islam, Ouattara and the NYTWA face immediate and irreparable harm…"). It is unclear whether Plaintiffs are conceding that Plaintiffs Rumon and Singh have no irreparable harm.

- Plaintiff Ouattara: Eligible for PUA on May 22, 2020. Receives weekly benefit rate of $782 [$182 PUA + $600 FPUC]. <u>Id</u>. ¶ 24.

- Plaintiff Rumon: Eligible for UI on or about April 5, 2020. Receives weekly benefit rate of $755 [$155 UI + $600 FPUC]. <u>Id</u>. ¶ 21.

- Plaintiff Singh: Eligible for PUA on or about May 27, 2020. Receives weekly benefit rate of $782 [$182 PUA + $600 FPUC]. <u>Id</u>. ¶ 23.

To the extent Plaintiffs are claiming that it is the rate of their benefits that constitutes irreparable harm and that they are entitled to an upward adjustment of benefits,[4] this claim also fails to demonstrate irreparable harm. First, rate adjustments are an exclusively monetary injury that can be fully compensated by money damages. <u>See</u> <u>Kebapci</u>, 2016 U.S. Dist. LEXIS 159054, at *7; <u>see also</u> <u>Brown v. N.Y.C. Health & Hosps. Corp. Emergency Med. Serv.</u>, 1996 U.S. Dist. LEXIS 22451, at *7-8 (E.D.N.Y. Feb. 5, 1996) (denying mandatory injunction to redress monetary losses due to a challenged employment demotion).

Second, rate adjustment harm cannot be considered irreparable because such a claim can be resolved through DOL's administrative appeal process. <u>Walker v. Comm'r of the NYS Dep't of Labor & Unemployment</u>, 2015 U.S. Dist. LEXIS 2307, at *15 (E.D.N.Y. Jan. 8, 2015) (Gleeson, J.) (denying PI seeking reinstatement of UI benefits, noting "although it may be frustrating to plaintiff, there is an ongoing process within [DOL] regarding the denial of his unemployment benefits through which plaintiff may seek review of the DOL's determination…"). For proof of this point, the Court need look no further than Plaintiff Islam whose PUA rate was just adjusted by DOL from his initial rate of $291/week to the maximum allowable $504/week (plus the FPUC of $600 a week) as a result of his request for reconsideration. Taylor Decl. ¶ 22.

Three Plaintiffs (Islam, Singh and Rumon) have already availed themselves of the UI

---

[4] This appears to be the gravamen of Plaintiffs' claims. Dkt. 1 ¶¶ 97, 125; 147; 166.

appeal process, and the fourth (Ouattara) may still do so. Taylor Decl. ¶ 12. Moreover, there is an additional PUA appeal process that Plaintiffs can use to challenge their weekly benefit under PUA. See 42 U.S.C. §§ 503(a)(1) and 503(a)(3) [Social Security Act]; see also 20 C.F.R. Pt. 650; Campion Decl. ¶ 15. To date, none of the Plaintiffs have availed themselves of the separate PUA appeal process. Taylor Decl. ¶ 19. As such, to the extent Plaintiffs are entitled to higher benefit rates, the administrative appeal processes are designed to rectify any errors and to make Plaintiffs whole. Campion Decl. ¶¶ 15-16.

The individual Plaintiffs' alleged harm would be fully compensable by an award of money damages. As such, there is no showing of irreparable harm to justify a grant of injunctive relief.

## B. The Organizational Plaintiff Does Not Articulate Irreparable Harm

Plaintiff NYTWA asserts that it has suffered organizational harm as a result of DOL's conduct. Dkt. 7-5 at 8-11. The organization argues that its diversion of resources and manpower to assist members with UI benefits and their attendant advocacy constitute irreparable injury. Id. This argument, however, has been rejected by various courts, which maintain that the diversion of organizational resources does not constitute irreparable harm. See NRDC v. United States FDA, 884 F. Supp. 2d 108, 124 (S.D.N.Y. 2012) ("[t]he argument that potentially wasted and diverted staff resources constitutes irreparable harm has been held meritless"); see also Graphic Communications Union v. Chicago Tribune Co., 779 F.2d 13, 15 (7th Cir. 1985) (costs incurred as consequence of compliance with a court order do not establish irreparable harm); Shays v. Fec, 340 F. Supp. 2d 39, 48 (D.D.C. 2004) ("mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough to satisfy irreparable harm inquiry.").

In support of its argument in favor of irreparable harm, Plaintiff relies on cases that discuss

11

"injury-in-fact" for purposes of establishing standing. This reliance is misplaced as none of Plaintiffs' cited cases discuss irreparable harm. Dkt. 7-5 at 8. The standing concept of "injury-in-fact" and the injunctive concept of "irreparable harm" are not interchangeable. See Salix v. United States Forest Serv., 944 F. Supp. 2d 984, 1002 (D. Mont. 2013) ("establishing injury-in-fact for the purposes of standing is less demanding than demonstrating irreparable harm to obtain injunctive relief"); citing Carribean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988); see also Ctr. for Food Safety v. Vilsack, 636 F.3d 1166, 1171 n. 6 (9th Cir. 2011). If "injury-in-fact" and irreparable harm were the same, then any time a plaintiff had standing to sue, s/he would automatically meet the injunctive standard for harm—rendering the irreparable harm standard moot. This is not the case. See Great Lakes Dredge & Dock Co. v. Ludwig, 486 F. Supp. 1305, 1308 (W.D.N.Y. 1980) (finding "injury in fact" to support standing, but denying PI as no "irreparable harm").

Plaintiff NYTWA's reliance on Nnebe and Centro de la Comunidad to support its arguments in favor of organizational irreparable harm is misplaced. Plaintiff asserts that these cases support the proposition that a non-profit organization suffers "irreparable harm when an administrative rule or action causes ongoing harms to their organizational missions." Dkt. 7-5 at 8 (emphasis added). Yet, neither Nnebe nor Centro de la Comunidad discusses an injunction or even mentions the term "irreparable harm"—they are both exclusively organizational standing cases. See Nnebe v. Daus 644 F.3d 147, 156 (2d Cir. 2011); see also Centro de la Comunidad Hispana De Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109-110 (2d Cir. 2017).

### C.  Plaintiffs' Equal Protection Claim Does Not Constitute Per Se Irreparable Harm

Plaintiffs assert that they establish per se irreparable harm by alleging a constitutional equal protection violation. Dkt. 7-5 at 5-6. The Second Circuit standard, however, is that while "the

deprivation of a constitutional right <u>may</u> constitute <u>per se</u> irreparable harm in the context of a preliminary injunction, where money damages could make movants whole…their injury is plainly reparable and movants have not demonstrated the type of harm entitling them to injunctive relief." <u>Smith v. Fredrico</u>, 2012 U.S. Dist. LEXIS 184193, at *10 (E.D.N.Y. Nov. 20, 2012) (emphasis added). As set forth above, Plaintiffs' purported injuries can be fully redressed by an award of money damages, so there is no irreparable harm based on the fact that they also plead a constitutional violation.

Moreover, a movant does not automatically satisfy the showing of irreparable harm by simply pleading a constitutional infraction—they have to "adequately support their claim." <u>Vt. Coal. for Cmty. Schs, Inc. v. Harwood Unified Union Sch. Dist.</u>, 2020 U.S. Dist. LEXIS 21632, at *9 (D. Vt. Jan. 31, 2020), which Plaintiffs have not done here.  <u>See</u> discussion <u>infra</u> Point III(D).

<div align="center">

**POINT III**
**PLAINTIFFS CANNOT ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

</div>

To qualify for the special injunctive relief of a mandatory injunction, Plaintiffs must also "show not just likelihood of success but a 'clear' or 'substantial' likelihood of success on the merits." <u>John Gil Constr., Inc. v. Riverso</u>, 72 F. Supp. 2d 242, 249 (S.D.N.Y. 1999). The "'clear' or 'substantial' showing requirement … alters the traditional [PI] formula by requiring that the movant demonstrate a greater likelihood of success." <u>Tom Doherty Assocs. v. Saban Entm't, Inc.</u>, 60 F.3d 27, 34 (2d Cir. 1995).

<div align="center">

**A.  The Complaint is Not Ripe as Plaintiffs Have Pending Administrative Appeal Remedies and There is No Final Decision**

</div>

To demonstrate a likelihood of success on the merits, a movant must establish that the Court has subject matter jurisdiction. <u>Smith v. Judges</u>, 2017 U.S. Dist. LEXIS 141358, at *8 (D. Conn. Mar. 23, 2017). Ripeness "is a constitutional prerequisite to the exercise of jurisdiction by

<div align="center">13</div>

the federal courts." <u>United States v. Quinones</u>, 313 F.3d 49, 58 (2d Cir. 2002). A claim is "not ripe unless a final decision is made on the application." <u>Hennelly v. Town of Middletown</u>, 2010 U.S. Dist. LEXIS 114703, at *5 (N.D.N.Y. Oct. 28, 2010). A "final decision" is a "definitive position on the issue that inflicts an actual, concrete injury." <u>County View Estates Ridge LLC</u>, 452 F. Supp. 2d 142, 149 (2d Cir. 2006).

Plaintiffs raise two primary claims: (1) they are entitled to benefits under the UI program, and not PUA, as they qualify as "employees" of FHV service companies, and (2) they are receiving improper benefit rates under either PUA or UI. <u>See generally</u> Dkt. 1. Neither of these claims is ripe for adjudication because there is no final determination from DOL on either subject. <u>See</u> <u>Walker</u>, 2015 U.S. Dist. LEXIS 2307, at *15 (no PI where no final decision on UI claims).

To the extent Plaintiffs are arguing that DOL improperly denied them UI benefits, they can request reconsideration of this decision in the appeal process. Campion Decl. ¶¶ 14-19; Labor Law § 597(2)(b). In fact, three of four Plaintiffs have already submitted such a request. <u>See</u> Dkt. 1 ¶ 148 (Rumon submitted on April 15, 2020); Dkt. 1 ¶ 160 (Singh submitted on April 29, 2020); Taylor Decl. ¶ 12 (Islam submitted on April 28, 2020). Plaintiff Ouattara has not filed a request for reconsideration of his initial ineligibility determination, but he is not foreclosed from doing so now[5]. <u>Id</u>.

In addition, a claimant may also request a hearing as to any adverse benefit determination before an Unemployment Insurance Appeals Board ("UIAB") Administrative Law Judge ("ALJ"). Campion Decl. ¶¶ 14-19; Labor Law § 620. After the ALJ renders a decision, the claimant can then appeal that decision to the UIAB. <u>Id</u>.; Labor Law § 621. Following decision by the UIAB, a claimant can then request reconsideration or appeal directly to the New York State Appellate

---

[5] Plaintiff Ouattara states that he did file a request for reconsideration. Dkt. 1 ¶ 121. DOL has no record of such filing.

14

Division, Third Department. Id.; 12 NYCRR § 463.6; Labor Law § 624. Plaintiffs can use these appeal processes to challenge any aspect of the MBD—either entitlement to UI or their benefit rates under UI. Id.

Alternatively, to the extent Plaintiffs' Complaint is read as a challenge to their current benefit rate under PUA, there is also an administrative appeal process designed specifically for that. Id. ¶ 15; Campion Decl. Ex. A (UIPL 16-20 Attachment I Section (C)(13)(g)). Plaintiffs assert that they are entitled to the maximum available benefit under UI--$504.00/week. Dkt. 1 ¶¶ 97, 125, 147, 166. If they are eligible, they could obtain this same exact rate under PUA, plus the additional $600 under FPUC, which they are already receiving. Taylor Decl. ¶ 22; Labor Law § 590(5) Plaintiffs (Islam, Ouattara, and Singh) have not appealed their PUA benefit rate as of the date of this filing. Taylor Decl. ¶¶ 19, 28. It is worth noting that Plaintiff Islam is already receiving the highest statutory benefit rate so would not have a basis for reconsideration. Id. ¶ 22.

**B.  Plaintiffs' Claim Under the SSA's "When Due" Clause is Not Likely To Succeed**

Plaintiffs cannot establish a "clear or substantial" likelihood of success on the merits of their claim that DOL violated the "when due" clause of the SSA [42 U.S.C. §§ 501-504 and 20 C.F.R. § 640.3(a)] (Dkt. 1 ¶¶ 181-185).  Plaintiffs are arguing a novel application  of the SSA "when due" provision—that is, that DOL's purported failure to obtain income records from FHV service companies resulted in Plaintiffs' threshold denials, which triggered a delay in their receipt of benefits under UI, in violation of "when due." Dkt. 1. This theory is based on a mistaken understanding of DOL's ability to require a private company to produce records. DOL does not have the power to obtain records that Plaintiffs claim—and Plaintiffs were treated in a manner consistent with all other workers, in any field, whose companies do not make wage data available. See discussion at infra Point III(D)(1). Moreover, Plaintiffs were properly classified and received

15

prompt benefits under PUA. Taylor Decl. ¶¶ 15-24.

The "when due" provision is intended to ensure that those already deemed eligible for UI receive prompt payment. "When due" was intended "to mean at the earliest stage of unemployment that such payments were administratively feasible after giving both the worker and the employer an opportunity to be heard." Dunn v. N.Y. State Dep't of Labor, 474 F. Supp. 269, 273 (S.D.N.Y. 1979) (quoting Cal. Dep't of Human Res. v. Java, 402 U.S. 121 (1971)).

Here, Plaintiff Rumon was adjudged eligible for UI, started receiving benefits on April 9, 2020, and is appealing his rate of benefits. Dkt. 1 ¶ 142. There is no viable claim of delayed UI payment for Plaintiff Rumon, as he concedes that he received his benefits promptly within 2-3 weeks after eligibility determination. Id. The other three Plaintiffs (Islam, Ouattara, and Singh) were deemed ineligible for UI benefits because they did not meet the statutory wage threshold. Taylor Decl. ¶ 8. Thus, the "when due" provision of the SSA was not triggered because there has been no determination of eligibility. If Plaintiffs were to succeed at any level of the administrative appeal process and obtain a decision of UI eligibility, only then would the SSA's "when due" clause require DOL to ensure prompt payment in line with administrative feasibility.

Subsequent to their denials of UI, Plaintiffs Islam, Ouattara, and Singh made a separate application for PUA, and DOL correctly determined each to be eligible for PUA benefits. Dk. 1; Taylor Decl. ¶¶ 13-20; Campion Decl. Ex. A. All three have been paid their PUA benefits, along with FPUC, promptly. Taylor Decl. ¶¶ 21-24. As such, there also is no viable SSA "when due" claim respecting PUA benefits.

### C.  Plaintiffs Were Not Misclassified into PUA and Their Receipt of Benefits Under PUA Does Not Violate "When Due" by Delaying UI Benefits

Plaintiffs next argue that they were misclassified into PUA, which, they claim, violated the SSA's "when due" clause by delaying their full UI benefits.  Dkt. 7-5 at 17-19. The gravamen of

Plaintiffs' claim is that "by instructing so-called gig workers to apply for PUA…DOL fails to deliver benefits in a timely manner." Id. They claim that DOL was "steering" them to PUA,[6] and, by doing so, DOL ignored past precedent by classifying app-based drivers as "independent contractors" and not employees of the FHV service companies. Id. Finally, they assert that under PUA, Plaintiffs cannot access the benefit rate that they would be entitled to under UI. Id. Plaintiffs' argument is based on faulty premises.

1.   Plaintiffs Were Not Deemed Ineligible for UI Based on a Classification Decision

Plaintiffs' designation as ineligible for UI was not based on a determination by DOL that they were independent contractors.[7] Taylor Decl. ¶¶ 8-9. Based on DOL's current system, initial determinations of eligibility are based on the claimant's ability to meet the earning threshold. Campion ¶¶ 2-5. This determination is based on the availability of earning records to DOL. Id.; Campion Decl. ¶¶ 2-5. When no such records are present in DOL's system, due to a company's failure to provide them to the Department of Tax and Finance, the earnings threshold is not met, the claimant is thus rendered ineligible and must request reconsideration to challenge the ineligibility. Id. ¶¶ 14-19. At Plaintiff's initial determination phase, DOL did not render a decision as to employee versus independent contractor status—such classification decision would occur at the reconsideration level that Plaintiffs have or can exhaust. Taylor Decl. ¶¶ 8-9.

---

[6] None of the three Plaintiffs on PUA (Ouattara, Singh and Islam) were "steered" or forced to apply for that program. Two of the three Plaintiffs (Ouattara and Singh) voluntarily applied for PUA before DOL issued any PUA guidelines. Dkt. 1 ¶ 123 (Ouattara), ¶ 159 (Singh); Taylor Decl. ¶ 17. And, Plaintiff Islam applied for PUA on April 21 and makes no mention of doing so at the insistence of DOL or in response to any guidelines issued by DOL. Id. ¶ 93.

[7] Plaintiffs repeatedly argue that the UIAB and court precedent dictate that all app-based drivers across the board have been deemed employees of FHV service companies. Dkt. 1 ¶¶ 62-69. While DOL does not argue with the findings of the UIAB and past precedent, the scope and effect of those decisions does not eliminate the individualized determinations required under Labor Law. The cited precedent does not mean that all workers are automatically deemed employees for purposes of unemployment benefits—the decisions are based on a wholly separate factual inquiry. Benefit determinations are still done on a case-by-case basis and DOL does not have the authority to deem this issue resolved across the board and force FHV service companies to waive their due process right to challenge employee classification in the future.

2.   Plaintiffs Qualify for PUA Benefits

Second, Plaintiffs argue that they were misclassified into PUA. Dkt. 7-5 at 17. A review of the federal law and pertinent guidelines demonstrate that Plaintiffs all qualify for PUA.

As set forth more fully in the Campion Declaration, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") includes a provision of temporary benefits for individuals "who…are not eligible for regular [UI]…These individuals may also include certain gig economy workers." Campion Decl. Ex. A [USDOL PUA Program Letter No. 16-20, April 5, 2020]. Thus, as a threshold prerequisite to qualify for PUA, a claimant must receive an initial determination of ineligibility for UI benefits. See CARES Act § 2102(a)(3)(A)(i). As set forth above, all three Plaintiffs receiving PUA were determined ineligible for UI by DOL at the initial phase, based on their threshold wage rates. See discussion supra Point III(C)(1). The next inquiry of eligibility turns on whether the claimant is unemployed based on a COVID-19 related reason.

PUA provides up to 39 weeks of benefits "to qualifying individuals who are otherwise able to work and available for work within the meaning of applicable state [UI] law, except that they are unemployed, partially unemployed, or unable or unavailable to work due to one of the COVID-19 related reasons identified in Section 2102(a)(3)(A)(ii)(I) of the CARES Act … ." Campion Decl. Ex. A. Section 2102 of the CARES Act defines who are "covered individuals" under PUA. Id.

The United States Department of Labor ("USDOL") considers a claimant to be a "covered individual" under PUA where s/he qualifies for one of certain enumerated "COVID-19 related reasons." Id. Included in this list of reasons is sub-section (K), which is defined as individual that "meets any additional criteria established by the Secretary [of USDOL]…." Id. Under sub-section (K), USDOL specifically deemed claimants like Plaintiffs as meeting the criteria for PUA—and

18

even includes a specific example to illustrate the eligible claimants:

> For example, a driver for a ridesharing service who receives an IRS Form 1099 from the ride sharing … may still qualify for PUA benefits if he or she has been forced to suspend operations as a direct result of the COVID-19 public health emergency, such as if an emergency state or municipal order restricting movement makes continued operations unsustainable. Id.

Applying this eligibility criteria to the specific facts plead by Plaintiffs illustrates that they meet the conditions of sub-section (K). All of the Plaintiffs concede in this lawsuit that they were forced to stop working as drivers due to COVID-19 reasons.

| Islam | Dkt 7-2 ¶5 | "I stopped working as a Lyft driver on March 15, 2020 as a result of COVID-19." |
|---|---|---|
| Ouattara | Dkt 7-3 ¶5 | "I stopped working as an Uber and Lyft driver on March 16, 2020 as a result of COVID-19. By March 16, 2020 there was no longer sufficient work available on the streets and I was concerned about my safety and my family's safety if I were to continue working." |
| Rumon | Dkt 1 ¶132 | "Mr. Rumon has been employed by Uber and Lyft as a driver from 2016 until March 8, 2020 when he stopped working as a result of COVID-19." |
| Singh | Dkt. 1 ¶151 | "Mr. Singh has been employed by Uber as a driver from 2018 until March 9, 2020, when he stopped working as a result of COVID-19." |

Moreover, covered employees under Section 2102 of the CARES Act also include "self-employed" workers. Campion Decl. Ex. A at I-3. USDOL specifically identified that PUA applies to the self-employed and gig workers. Campion Decl. Ex. A. Plaintiffs admit that they self-identify as "gig workers" [Dkt. 1 ¶¶ 62, 71, 72, 73; 7-5 at 18] and even declared themselves "self-employed" on their PUA applications. Taylor Decl. ¶ 17.

In short, based on the statements Plaintiffs themselves made in their PUA applications, that they were unable to work specifically due to COVID-19,  Plaintiffs are precisely the type of claimants who qualify for PUA under federal guidelines.

3.  Plaintiffs Can Receive the Same Benefit Rate Under PUA as Under UI

Third, Plaintiffs' argument also mischaracterizes the available benefits under PUA. Dkt. 7-5 at 17-18. Plaintiffs claim that by placing them in PUA[8] they cannot receive their "full benefits" and thus DOL violates the SSA's "when due" clause. Dkt. 7-5 at 17-19. This argument improperly assumes that the available benefit rates under PUA are less than available benefits under UI. This is not so. Under PUA a claimant can receive the same total benefit value as under UI. See CARES Act Section 2102 (d)(1)(A)(i) (PUA benefit is equal to "the weekly benefit amount authorized under the unemployment compensation law of the State where the covered individual was employed…"). As set forth above, Plaintiffs can appeal their PUA rate, prove their earnings and get the same rate as under UI, if they are so entitled. See supra Point II. For example, DOL recently modified Plaintiff Islam's PUA rate to $504/week, which is the legal maximum allowable rate under UI. Taylor Decl. ¶ 22.

4.  Being Provided Expedited Benefits Under PUA Does Not Violate "When Due"

Fourth, Plaintiffs also argue that by being provided expedited benefits under PUA, DOL violated the SSA's "when due" clause by not getting them UI benefits quickly enough. Dkt. 7-5 17-19. Defendants' providing Plaintiffs with benefits under PUA was, however, fully in line with the underlying purpose of the SSA and its "when due" clause.

The SSA prioritizes "prompt if only partial replacement of wages to the unemployed, to enable workers to tide themselves over, until they get back to their old work or find other employment, without having to resort to relief." Java, 402 U.S. at 131-132. The "when due" clause requires benefit payment "at the earliest stage of unemployment that such payments were administratively feasible requires." Dunn, 474 F. Supp. at 273. Plaintiffs received PUA benefits

---

[8] Again, there is no record evidence that Plaintiffs' were forced into PUA. Indeed, Plaintiffs concede that they voluntarily applied for PUA after being deemed ineligible for UI. Dkt. 1; Taylor Decl. ¶ 17.

promptly upon a determination of eligibility. Taylor Decl. ¶¶ 21-24. DOL began paying PUA to plaintiffs right away – without delay, and consistent with the SSA's "when due" clause.

### D.  DOL Has No Legal Authority to Mandate FHV Service Companies to Produce Earnings Data

Plaintiffs also allege that in not compelling FHV service companies such as Uber and Lyft to produce quarterly income data for their drivers, DOL has violated the SSA's "when due" clause by delaying UI payments and violated the Equal Protection clause by differentially enforcing the wage reporting laws to the detriment of Plaintiffs. Dkt. 7-5 14-17; 19-22.

Plaintiffs' arguments fail as they are founded on an incorrect interpretation of DOL's power to obtain records under the Labor Law. Plaintiffs assert that DOL has the legal power to "compel" private companies to provide wage reporting information. Id. at 16.l, DOL does not have this authority,[9] and Plaintiffs are properly receiving benefits under PUA, in any event.

The Labor Law does not authorize the DOL Commissioner to compel employers to file wage reporting information. Tax Law § 674(a)(4) requires employers to file quarterly wage reporting information for all "employees." Id. Where the employer fails to file such quarterly documentation, DOL is authorized to assess the unemployment tax contributions due by the employer on the basis of the available information. Labor Law § 571. Moreover, where DOL renders a final decision that an employer is liable for contributions and failed to file a true and complete quarterly combined withholding, wage reporting and unemployment insurance return, DOL may assess penalties against the employer. Labor Law § 575-a. These provisions do not authorize the DOL to compel employers to file wage reporting information—they all contemplate after the fact relief exclusively.

---

[9] Plaintiffs imply that DOL has done nothing to obtain wage records from the FHV service companies. The Court should note that any action DOL may take related to third parties is confidential under Labor Law § 537.

Similarly, Labor Law § 597 sets forth the process for initial determinations of UI eligibility. Pursuant to Labor Law § 597, when filing an original claim for UI benefits, if wage data reports from the employer are not available, then the Commissioner is authorized to utilize information provided by the claimants. Labor Law § 597(b). Where a claimant is unable to provide the required records, then Section 597(2)(b) counsels that "the commissioner <u>may</u> request the employer to provide the amount of remuneration." <u>Id</u>. (emphasis added). Again, this provision of Labor Law does not authorize DOL to compel the employer to turn over records.

Because DOL does not have the legal authority to compel private companies to produce quarterly employment records, Plaintiffs' SSA "when due" argument fails.

1. <u>Plaintiffs Have Not Stated a Viable Equal Protection Claim</u>

Plaintiffs also assert a discriminatory enforcement argument under the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution. Dkt. 1 ¶ 186-195. Specifically, Plaintiffs argue that by not enforcing its power to compel the production of wage information against FHV service companies, DOL is treating app-based drivers differently from other workers whose employers DOL purportedly compels to produce such materials. Dkt. 7-5 at 19-22.  Because DOL does not have the power to compel records that Plaintiffs attributes to the agency, this claim fails. <u>See supra</u> Point III(D)(1). As their claim is premised on this false statement of law, Plaintiffs argument necessarily fails.

Further, even if the Court wishes to undertake a constitutional analysis, the claim is not likely to succeed. To the extent that Plaintiffs raise an "as applied" constitutional challenge, i.e. that the wage reporting law was discriminatorily enforced, Plaintiffs bear the burden of pleading that they were treated differently than other similarly situated groups of people. <u>Iacono v. Town Bd. of E. Hampton</u>, 2006 U.S. Dist. LEXIS 113422, at *22 (E.D.N.Y. Sep. 18, 2006). Plaintiffs

have not pled evidence of dissimilar treatment from any like situated group of workers, nor can they, because all similarly situated workers are subject to the same treatment. Campion Decl. ¶¶ 14-19. Plaintiffs are being treated the same as any worker with an employer who fails to report quarterly earnings data to the Department of Tax and Finance. Id.

Moreover, as beneficiaries of PUA with ample administrative appeal rights not exhausted, Plaintiffs have not been disadvantaged. In fact, they are in better standing then many other workers that do not qualify for PUA, whose only remedy is the administrative appeal process.

<div align="center">

**POINT IV**
**THE BALANCE OF THE EQUITIES FAVORS DENIAL OF THE INJUNCTION**

</div>

When deciding whether to issue a preliminary injunction, the Court must balance the equities for and against the injunction. Bernardino v. Barnes & Noble Booksellers, Inc., 2017 U.S. Dist. LEXIS 129038, at *27 (S.D.N.Y. Aug. 11, 2017). Here, the equities favor denial of the injunction.

In the current economic climate, amidst the enormous volume of unemployment claims resulting from the devastating effects of the COVID-19 pandemic, and millions of New York workers either unemployed or underemployed [Martinez Decl. ¶¶ 14-16], it is against the public interest to single out one group of New York workers for relief to the potential detriment of others. DOL's resources are best used in continuing to address the historic number of UI and PUA applications. The relief requested by this mandatory injunction would require DOL to draw resources from that critical effort.

As Plaintiffs are already all receiving unemployment benefits either under UI or PUA and FPUC, Taylor Decl. ¶¶ 22-24, and have ample administrative appellate remedies to challenge purported benefit deficiencies, Campion Decl. ¶¶ 15-19, diverting DOL resources away from other unemployment claims subverts the public's interest and tips the balance of the equities in

Defendants' favor.

## POINT V

**DEFENDANTS ARE ENTITLED TO ELEVENTH AMENDMENT IMMUNITY FOR SOME OF PLAINTIFFS' CLAIMS**

In addition to all of the points above, Plaintiffs' Complaint also suffers from problems of sovereign immunity that impact the viability of injunctive relief. First, Defendant DOL is entitled to Eleventh Amendment immunity as to all claims asserted against it—be them monetary, injunctive or declaratory in nature. See Wallace v. New York, 40 F. Supp. 3d 278, 303-305 (E.D.N.Y. 2014). ("Eleventh Amendment immunity ultimately shields the State from any federal lawsuit against it in its own name regardless of the relief sought, unless it has waived its Eleventh Amendment immunity or Congress has overridden it"). Both of Plaintiffs' causes of action are brought pursuant to 42 USC § 1983. Dkt. 1 ¶¶ 180-195. It is well established that the "State has not agreed to waive, nor has Congress intended to override, the State's immunity from being sued in federal court based on Section 1983." Id.

Second, Defendants Governor Andrew M. Cuomo and Commissioner Roberta Reardon are entitled to Eleventh Amendment immunity as to Plaintiffs' requested relief seeking payment of UI benefits to the Plaintiffs and all app-based driver claimants in New York State. Dkt. 1 Wherefore Cl. 2. Although the Ex parte Young doctrine may not render State officials "immune from official-capacity claims seeking prospective injunctive or declaratory relief," Wallace, 40 F. Supp. at 303-305, the payment of UI benefits is not considered prospective relief, but rather retroactive monetary relief against the State. See Edelman v. Jordan, 415 U.S. 651, 653 (1974); see also Telesford v. Tamer, 2016 U.S. Dist. LEXIS 118374, at *20 (N.D.N.Y. Aug. 13, 2016). Such retroactive claims are subject to sovereign immunity.

Additionally, Plaintiffs' request for injunctive relief in the nature of a Court imposed

24

"streamlined process" for monetary eligibility and an injunction forcing DOL to obtain non-party records are both unavailable under the Eleventh Amendment. Dkt. 7 at 3. By these requests, Plaintiffs are asking a federal court to fashion an administrative process for payment and compulsion of records under the State's Labor Law. This is impermissible under basic principles of federalism.[10] See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.)" Id.

## CONCLUSION

For the reasons set forth above, Plaintiffs' mandatory preliminary injunction must be denied.

Dated: Albany, New York
June 17, 2020

<div style="margin-left:40%">

LETITIA JAMES
Attorney General of the State of New York
Attorneys for Defendants
The Capitol
Albany, New York 12224-0341
By: S/ C. Harris Dague
C. Harris Dague
Assistant Attorney General, of Counsel
EDNY Bar #: CD4035

</div>

To:     Plaintiff's Counsel (via CM/ECF)

---

[10] Plaintiffs' request to require Defendants to obtain records from FHV service companies, when those employers are not parties to this action, also raises due process concerns for the FHV service companies whose property Plaintiffs are asking this Court to be seized.