UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MD ISLAM, DOH OUATTARA, ABDUL
RUMON, HARNEK SINGH, and NEW YORK
TAXI WORKERS ALLIANCE,

Plaintiffs,

v.

CATHY HOCHUL, GOVERNOR OF THE STATE
OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF LABOR, and ROBERTA
REARDON, as COMMISSIONER OF LABOR

Defendant.

**<u>MEMORANDUM AND ORDER</u>**

20-CV-2328 (LDH) (CLP)

LaSHANN DeARCY HALL, United States District Judge:

MD Islam, Doh Ouattara, Abdul Rumon, and Harnek Singh (collectively, "Individual

Plaintiffs"), and the New York Taxi Workers Alliance ("NYTWA," together with Individual

Plaintiffs, "Plaintiffs") bring the instant action pursuant to 42 U.S.C. § 1983 against Cathy

Hochul, Governor of the State of New York, the New York Department of Labor (the

"Department of Labor"), and Roberta Reardon, Commissioner of Labor (collectively,

"Defendants") alleging violation of Title III of the Social Security Act of 1935 (the "Act" or

"Title III") and the Equal Protection Clause of the Fourteenth Amendment of the U.S.

Constitution for failure to pay unemployment insurance benefits when due.  Defendants move

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) to dismiss the complaint in its

entirety.

## BACKGROUND[1]

Individual Plaintiffs are former drivers for Uber, Lyft, and other app-based for-hire vehicle ("FHV") companies offering transportation services.  (Compl. ¶¶ 1, 44, 46, ECF No. 1.) NYTWA is a not-for-profit membership organization comprised of roughly 23,000 FHV drivers, half of whom are app-based drivers.  (*Id.* ¶¶ 12, 168.)  Around mid-March 2020, following the outbreak of the COVID-19 pandemic, Individual Plaintiffs found themselves without work and each applied for UI benefits.  (*Id.* ¶¶ 63–64.)  After submitting online unemployment insurance ("UI") applications, Individual Plaintiffs were instructed to complete their applications over the phone.  (*Id.* ¶¶ 86, 113, 136, 154.)  Over the phone, the Department of Labor requested that Plaintiffs Islam, Rumon, and Singh submit their 1099 tax forms for wages earned from their respective app-based FHV companies.  (*Id.* ¶¶ 88, 139, 156.)  Individual Plaintiffs received Monetary Benefit Determinations ("MBDs") reflecting $0 earned from their app-based FHV employers, despite having earned enough from these companies to be eligible for UI benefits. (*Id.* ¶¶ 91, 95, 97, 120, 124–125, 142–144, 146–147, 158, 165–166.)  Thereafter, Individual Plaintiffs submitted Requests for Reconsideration based on their independently reported earnings from app-based FHV work.  (*Id.* ¶¶ 121, 148, 160.)  As of the filing of the instant complaint, on May 25, 2020, Individual Plaintiffs' Requests for Reconsideration were still pending and they had not received UI benefits for app-based FHV work, despite having applied months prior.  (*Id.* ¶¶ 85, 103, 112, 121, 135, 148, 153, 162.)  Plaintiffs allege that pursuant to the Department of Labor's UI Handbook, they should have received benefits within 2-3 weeks from the date of their applications.  (*Id.* ¶¶ 100, 126, 141, 163.)

---

[1]  The following facts are taken from the complaint, declarations submitted in support of Plaintiffs' and Defendants' memoranda of law, and public sources, of which the Court takes judicial notice.

## I.   MOTION TO COMPEL

On May 26, 2020, Plaintiffs moved for a preliminary injunction seeking in part to:  (1) enjoin Defendants to immediately pay UI benefits to Individual Plaintiffs and all app-based FHV drivers who have applied for UI benefits ("FHV claimants") based on earnings from app-based FHV work; (2) enjoin Defendants to require Uber, Lyft, and other app-based FHV companies doing business in New York to provide driver earnings data to New York State; and (3) enjoin Defendants to create a streamlined process for the Department of Labor to immediately determine UI eligibility for all FHV claimants by allowing FHV claimants to self-attest to their earnings online or by phone, without immediately requiring documentary proof of earnings. (Pls.' Mot. Prelim. Inj. at 2, ECF No. 7.)  By memorandum and order dated July 28, 2020 ("PI Order"), the Court granted Plaintiffs' motion, in part.  (*See* ECF No. 24.)

Pursuant to the P.I. Order, the Department of Labor was required to:  (i) convene and train a designated working group to assess and address FHV claimants' pending and backlogged Requests for Reconsideration and, based on claimant-submitted 1099 tax forms and other earnings documentation, update the claimant's account to appropriately include the app-based FHV wages; (ii) clear the total backlog of FHV claimants' Requests for Reconsideration and process FHV claimants' Requests for Reconsideration within an average of fourteen (14) days, once the backlog was resolved; (iii)  continue the use of its new Google Application, which permitted UI claimants to identify wages earned on a 1099 tax form during the application process and instructed claimants to send earnings documentation electronically; (iv) render MBDs within twenty-four (24) hours of a claimant's submitted application and prioritize Requests for Reconsideration where the claimant had provided records of wages through a 1099

tax form; (v) provide notice to all UI claimants regarding the ability to seek reconsideration of UI eligibility through existing Department of Labor channels, such as a social media campaign, text message, or two-way communication system; and (vi)  assess the feasibility of a designated telephone number for Requests for Reconsideration once a working group was created.  (P.I. Order at 25–26.)

Shortly after the entry of the P.I. Order, the Department of Labor formed and trained a 50-person working group, and assigned 170 existing staff members, to review FHV claimants' Requests for Reconsideration.  (Seventh Suppl. Thompson Decl. ¶ 10, ECF No. 71-4.)  By September 30, 2020, the working group and staff had identified, manually reviewed, and resolved approximately 40,000 backlogged FHV claimant Requests for Reconsideration and had started processing new requests from FHV claimants.  (*Id.* ¶ 11.)  As of April 8, 2021, the Department of Labor reviewed and processed over 68,000 FHV claimant Requests for Reconsideration.  (*Id.* ¶ 12.)  With respect to notice to FHV claimants, the Department of Labor has published messages through its accounts on Twitter, Facebook, and LinkedIn, informing FHV claimants about the Requests for Reconsideration process.  (*Id.* ¶ 15.)  The Department of Labor has also updated the "chatbot" feature on its website, added information regarding its telephone claims system to its website, and updated all messaging and forms to include information about how FHV claimants can electronically submit Requests for Reconsideration. (*Id.* ¶¶ 16–17.)

In July 2020, the Department of Labor launched the Google Application, an upgraded version of its online UI application system.  (*Id.* ¶ 20.)  Among other features, the Google Application provides clearer instruction for FHV claimants to provide wage documentation (such as 1099 tax forms) when applying for UI benefits and when their wages are not reported on a W-

2 form by an employer. (*Id*. ¶ 21.) According to Defendants, the Google Application can easily be scaled during high application periods, is more modern and user-friendly than its predecessor system, reduces claimant error and confusion, and allows the Department of Labor to respond to changes in state and federal regulations more easily. (*Id.*)

Despite these efforts, Plaintiffs argue that Defendants are not in compliance with the P.I. Order. (*See* Pls.' Mot. Compel at 2, ECF No. 73.) The crux of Plaintiffs' complaint concerning Defendants' compliance seemingly stems from a system-wide technical error affecting all categories of UI benefit claimants, including FHV claimants. As set out in the Ninth Declaration of Lars Thompson, the UI information system is programmed to make retroactive payments automatically when the Department of Labor increases a claimant's weekly benefit amount. (*See* Ninth Suppl. Thompson Decl. ¶ 4, ECF No. 74-1.) However, at some point after the issuance of the PI Order, Plaintiff NYTWA became aware of FHV claimants who had yet to receive their full UI benefits. (*See* Langley Decl. ¶¶ 4–5, ECF No. 36-1.) Specifically, NYTWA learned that approximately 265 FHV claimants' UI benefits were not retroactively paid based on prior FHV work, despite their accounts being properly adjusted for prospective benefits. (*Id*. ¶¶ 7–8.) Defendants discovered this technological error around October 2020, and by December 2020 the Department of Labor had identified roughly 4,500 FHV claimants who were entitled to retroactive benefits that they had not received. (Ninth Suppl. Thompson Decl. ¶ 11.) Then, in early 2021, the Department of Labor performed a system query that identified approximately 17,000 drivers who may have been affected by the technological error. (*Id*. ¶ 12.) The Department of Labor then undertook to manually review and process these claims and promptly issued payments to 12,000–15,000 FHV claimants who were entitled to retroactive benefits. (*Id*. ¶ 13.)

Of course, the P.I. Order did not contemplate the unexpected technical error that led to the underpayment of retroactive UI benefits.  The P.I. Order does, however, require that Defendants provide "notice to all [UI] . . . claimants of the ability to seek reconsideration through existing Department of Labor channels such as social media campaign, text message, and two-way communication system[s]."  (P.I. Order at 26.)  The Department of Labor has used these existing channels of communication to address the underpayment of benefits caused by the technical error.  (*See* Ninth Suppl. Thompson Decl. ¶ 11.)  Specifically, the Department of Labor has updated its "chatbot" and launched a social media campaign to notify claimants of the issue and informed them of their rights to obtain retroactive benefits.[2]  (*Id.*)  However, by their motion to compel, Plaintiffs seek an order requiring Defendants to send an additional targeted notice by email or physical mail to all potentially affected FHV claimants.  (Pls.' Mot. Compel at 3; *see also* Pls.' April 6, 2022 Status Ltr. at 2, ECF No. 81.)  Plaintiffs' request goes beyond the scope of the P.I. Order and it is denied.

## II.    MOTION TO DISMISS

### STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing by a preponderance of the evidence that subject-matter jurisdiction exists.  *Id.*  "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[].'"

---

[2] Defendants argue that preparing, printing, and sending Plaintiffs' proposed notice, in addition to the notice already provided on its website and through social media, would present overly burdensome and unnecessary administrative costs.  (Defs.' April 6, 2022 Status Ltr. at 3, ECF No. 82.)  The Court agrees.

*Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. Similarly, under Federal Rule of Civil Procedure 12(h)(3), a court must dismiss an action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). Indeed, "the distinction between a Rule 12(b)(1) motion and a Rule 12(h)(3) motion is largely academic, and the same standards are applicable to both types of motions." *Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) (citations omitted).

## DISCUSSION

Under Title III of the Social Security Act, the federal government provides funds to states to administer their unemployment compensation law, provided that the law of such states "includes provision for . . . methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due . . . ." 42 U.S.C. § 503(a)(1). This provision of Title III is known as the "when due" provision. (*Id.*) Under Title III's implementing regulation, state UI laws must provide for "such methods of administration as will reasonably ensure the full payment of unemployment benefits to eligible claimants with the greatest promptness that is administratively feasible." (*Id.* (citing 20 C.F.R. § 640.3(a).) Moreover, the regulation directs states to "obtain promptly and prior to a determination of an individual's right to benefits, such facts pertaining thereto as will be sufficient reasonably to insure the payment of benefits when due." (20 C.F.R. § Pt. 602, App. A.)

7

In deciding Plaintiff's motion for preliminary injunction, the Court spent considerable time setting out the Department of Labor's historical practice for administering UI benefits within the state.  (*See* P.I. Order at 2-5.)  In short, the process is as follows.  When a claimant applies for UI benefits in New York, the Department of Labor uses employer-reported wage and earnings data to make an initial MBD.  (*See* Compl. ¶ 32.)  The MBD, along with other factors, is used to determine a claimant's eligibility for UI benefits.  *See* N.Y. Lab. Law § 527.  A claimant who receives an MBD reflecting $0 in earnings is ineligible for UI Benefits.  (Compl. ¶ 27-28.)  Significantly, if a business listed as the claimant's employer on his or her UI application has not reported wage data to the New York State Department of Taxation and Finance, the Department of Labor will issue a $0 MBD.  (*See* Compl. ¶ 27; *see also* Taylor Decl. ¶ 9, ECF No. 12-4; Suppl. Geskey Decl. ¶¶ 4–8, ECF No. 19-4.)  Claimants who receive a $0 MBD, despite having earned wages, may submit a Request for Reconsideration and provide their own supporting wage and earnings documentation, such as a Form 1099-MISC ("1099 tax form").  (Compl. ¶ 28.)  If the Department of Labor finds that the earnings reflected in the documentation provided by the claimant should be properly considered, it will issue a revised MBD reflecting the additional wages and an UI eligibility determination.  (*Id*. ¶ 32.)

Plaintiffs allege that the Department of Labor has failed to provide UI benefits to app-based FHV claimants, including to Individual Plaintiffs, "when due," as required under the Social Security Act and by extension the Fourteenth Amendment to the United Sates Constitution.  (Compl. ¶ 1.)  Plaintiffs attribute this failure to two systemic issues.  (*Id*. ¶ 4.)  *First*, the Department of Labor does not require app-based FHV companies to provide wage data for their drivers.  (*Id*.)  Absent the employer data, FHC claimants receive a $0 MBD for income earned as FHV drivers.  (*Id*. ¶ 27.)  To potentially obtain UI benefits then, FHV claimants must

8

initiate an often-protracted Request for Reconsideration process.  (*Id*. ¶ 28.)  *Second*, where FHV

claimants have submitted their own earnings data in support of their claim to UI benefits, the

Department of Labor fails to timely process the UI applications of FHV claimants.  (*Id*. ¶ 4.)

Ultimately, according to Plaintiffs, the provision of UI benefits to Individual Plaintiffs, and other

FHV claimants have been delayed "by up to eight weeks or more."  (*Id*. ¶¶ 2, 4, 76.)  By

contrast, eligible claimants typically receive UI benefits within two to three weeks from the date

the claimant files a claim.  (*See Id*. ¶ 36.)

      This Court previously determined that Plaintiffs would likely succeed on the merits of

their claim.  (*See* P.I. Order at 18-24.)  That is, Defendants likely failed to provide UI benefits to

FHV claimants "when due" as required by the Social Security Act.  (*Id*. at 24.)  In so finding, the

Court took aim at Defendants over-reliance on employer data to determine an FHV claimant's

MBD and the resulting delays in the reconsideration process.  (*Id*. at 23-24.)  Defendants now

maintain that Plaintiffs claims have been rendered moot by the Defendants' post PI Order

conduct.  (*See* Defs.' Mem. at 8-11.)

      Under Article III of the U.S. Constitution, a federal court "may only adjudicate actual,

ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 317 (1988).  Relevant here, "a defendant's

voluntary cessation of a challenged practice does not deprive a federal court of its power to

determine the legality of the practice."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC),

Inc.*, 528 U.S. 167, 189 (2000) (quotation omitted).  Indeed, "a claim will not be found moot if

the defendant's change in conduct is merely superficial or . . . suffers from similar infirmities as

it did at the outset."  *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d

Cir. 2016) (internal quotation and citation omitted).  Accordingly, "to determine whether

voluntary cessation of conduct moots a controversy, a defendant must show 1) that the conduct

has, 'in fact, ceased[]'; 2) that there is 'no reasonable expectation that the alleged violation will recur[]'; and finally, that the 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation[.]'" *Samele v. Zucker*, 324 F. Supp. 3d 313, 328 (E.D.N.Y. 2018) (quoting *Am. Freedom Def. Initiative*, 815 F.3d at 109).  Put another way, "[t]he relevant question is whether the defendant's conduct has been sufficiently altered so as to present a substantially different controversy from the one that existed when . . . suit was filed." *Id*. (internal quotation and citation omitted).  Where, as here, injunctive relief is sought, "the decision on whether to exercise jurisdiction . . . lies within the discretion of the district court." *Ahrens v. Bowen*, 852 F.2d 49, 53 (2d Cir. 1988).

Defendants contend that they have "fully redressed" Plaintiffs' "complaint of delays" through compliance with the P.I. Order and improvements to the UI application process.  (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") at 9–11, ECF No. 71–1.)  In their motion, and accompanying declarations, Defendants detail these efforts.  Notably, the Department of Labor created a working group to adjudicate and resolve "over 40,000 back-logged app-based FHV driver Requests for Reconsideration" and have adjudicated of "over 68,000" app-based FHV driver-claimants' Requests for Reconsideration since the P.I. Order was issued in July 2020. (Seventh Suppl. Thompson Decl. ¶¶ 11–12.)  As of April 2021, there were no FHV Requests for Reconsideration pending review.  (*Id*. ¶ 12.)  Defendants began providing "notice regarding reconsideration processes" to drivers on social media on September 11, 2020.  (*Id*. ¶¶ 14–17.) Defendants have replaced the manual review process for claimants' Requests for Reconsideration, developed a new "case management tool" to better track, identify, and resolve claims, developed an "agent dashboard" to assist the Department of Labor staff in the review process, improved the accessibility of its website, and developed software "bots" to automate

simpler tasks and allow staff to "focus on responding to and adjudicating claimant issues."

(Defs.' Mem. at 11; Seventh Suppl. Thompson Decl. ¶¶ 26–28.)

Additionally, improvements to the Google Application now allow claimants to file for

and receive UI benefits more easily.  (*See* Defs.' Mem. at 10.)  Importantly, the Google

Application prompts claimants, including FHV claimants, to simultaneously submit wage data

when applying for UI benefits.  (Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") at 3, ECF

No. 71-7; Eighth Suppl. Thompson Decl. ¶¶ 5–6, ECF No. 71-8.)  The Google Application then

generates a $0 MBD and immediately processes a Request for Reconsideration to issue a

replacement MBD, without the need for a claimant to provide additional documentation or file a

formal Request for Reconsideration.  (Eighth Suppl. Thompson Decl. ¶¶ 5–6.)  The MBD is then

issued to FHV claimants within five days, on average.  (*See* Defs.' Mem. at 9.)  Defendants,

based on those facts, claim they have demonstrated that the complained of delays have

effectively ceased.  *See Alexander v. Yale Univ.*, 631 F.2d 178, 184 (2d Cir. 1980) (finding that

"major relief sought" had already been obtained because defendant alleviated alleged

"atmosphere of inequality").

Nonetheless, Plaintiffs maintain that their claims still present a live controversy.  In

setting out their claim under the Act, Plaintiffs allege that instead of paying UI benefits in "two

weeks" (Compl. ¶ 2), Defendants "delay the process for delivering benefits to drivers, often by

up to eight weeks or more, for no discernible reason" (*Id*. ¶ 4).  Plaintiffs further allege that

Defendants have violated Title III's "when due" clause where certain of the Individual Plaintiffs

"should have received their full benefits between March 28 and April 9, 2020" approximately

two weeks after applying.  (*Id*. ¶ 181; *see id*. ¶¶ 85, 112, 135,153.)  Similarly, Plaintiffs complain

that Defendants violate the Fourteenth Amendment because Plaintiffs "face months of delay after

completing their initial applications for unemployment benefits . . . ."  (*Id*. ¶ 193.)  In their

opposition, Plaintiffs sum up their claim stating that "Defendants' actions violate the Social

Security Act's 'when due' provision by failing to provide benefits to eligible claimants as soon

as practicably possible."  (Pls.' Mem. L. Opp'n Mot. Dismiss ("Pls.' Opp'n") at 1, ECF No 71-

5.).  The gravamen of Plaintiffs claim, therefore, is not the how UI benefit eligibility is

determined but rather when UI benefits are paid.

Plaintiffs rest their opposition principally on the notion that "the Google Application does

not meaningfully alter or simplify the application process for FHV, app-based drivers."  (Pls.'

Opp'n at 5.)  Plaintiffs highlight that "similar to the prior system, DOL's Google Application

still requires drivers to apply for benefits and receive a $0 [MBD].  The drivers must then submit

a Request for Reconsideration form and attach any supporting wage documentation, including

1099's and paystubs."  *(Id*. at 6.)  With respect to the MBD, Plaintiffs are correct.  However,

with respect to the Request for Reconsideration process, Plaintiffs' arguments ignore

improvements made to the process since the P.I. Order.  Such is the case for any claimant whose

employer fails to provide employee wage data.  (*See* Eighth Suppl. Thompson Decl. ¶¶ 5–7.)

However, Plaintiffs make no persuasive argument concerning the timing of the payment UI

benefits to FHV claimants' post the P.I. Order and the institution of the updated Google

Application with which they take issue.  In a single sentence, and citing to the Fourth Declaration

of Allison Langley, Plaintiffs assert that since the implementation of the Google Application

"applicants must still wait several weeks for DOL to review the submitted documentation, thus

preventing the issuance of benefits in a reasonable time."  (Pls.' Opp'n at 6 (citing Langley

Fourth Decl. ¶ 18, ECF No. 71-6).)  Ms. Langley's declaration, however, says no such thing.

And curiously, Plaintiffs do not identify a single FHV driver who is awaiting the processing of a

Request for Reconsideration.  Instead, Ms. Langley attests that since June 30, 2021, she has (1) sent approximately five emails to the Department of Labor customer service representatives at the Telephone Claims Center (TCC) regarding app-based, FHV drivers who were waiting for retroactive benefits, and (2) sent approximately three emails to the TCC regarding app based FHV drivers whose Request for Reconsideration had not been processed.  (*See* Langley 5th Decl. ¶¶ 3–4.)  Conspicuously absent from Ms. Langley's declaration is any mention of how long the claims of these unnamed drivers have been pending.  Ms. Langley's final assertion that "Nicole Salk, an attorney at Brooklyn Legal Services and co-counsel on this case, notified me of an additional app-based, FHV driver who was still waiting for his Request for Reconsideration to be processed after waiting 14 months for his benefit rate to be adjusted" is patent hearsay that will not be relied upon by the Court.  (*Id.* ¶ 5.; *see J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).)  At bottom, Plaintiffs offer no counter to Defendants' sworn assertion that under the newly implemented Google Application, UI benefits are paid to FHV claimants— including those whose employers fail to provide employment data—within five days of the date on which a claim is made.

Rather than address any purported ongoing delay in the payment of UI benefits, Plaintiffs suggest that a remedy in this case requires that the Department of Labor be mandated to obtain employer data information.  (Compl. ¶ 183.)  The Court, however, has already rejected this notion.  That is, in connection with their motion for preliminary injunction, Plaintiffs maintained that the denial or delay in payment of UI benefits to FHV claimants was attributable, in part, to requiring FHV companies to report wage and data earning in contravention of New York Labor law.[3]  (*See* Pls.' Mem. L. Supp. Mot. Prelim. Inj. at 14.))  The Court concluded, however, that

---

[3] Plaintiffs also argued that the violation stemmed from the Department of Labor's failure to classify Individual Plaintiffs and other FHV claims as employees.  The Court rejected this argument as well.  (*See* P.I. Order at 20–21.)

contrary to Plaintiffs' assertion, New York Labor law does not require the production of employer data for the purposes of determining claimant eligibility. (*See* P.I. Order at 21.) Ultimately, the Court declined to focus its analysis on FHV company's provision of employee data, but focused instead on other sources of discovery that could be obtained by the Department of Labor to ensure that the payment of UI benefits to FHV claimants was made "when due." Indeed, the Court registered its frustration that the Department of Labor would allow itself to be "lead by the leash" of FHV companies rather than fulfilling its obligation to use every tool in its tool kit to evaluate delays to ensure that payment of benefits to FHV claimants are promptly made. In effect, the Court concluded that the pertinent inquiry is a temporal one. As it should be. The Court is aware of the prolonged and ongoing dispute between app-based FHV drivers and app-based FHV companies regarding the latter's classification of app-based FHV drivers as independent contractors, rather than as employees, for the purposes of wage reporting. (*See* July 2, 2020 Prelim. Inj. Hr'ng Tr. 13:5–21.) Whatever the merits of app-based FHV drivers' position may be in this respect, the instant suit is not the vehicle through which app-based FHV drivers' employment status may be determined. Rather, the Court's inquiry is limited to whether the timing of the payment of insurance benefits made to app-based FHV drivers comports with the mandates of the Social Security Act.

A finding that Defendants have remedied the alleged delays in receiving UI benefits does not, however, end the Court's inquiry. Defendants still bear the "heavy burden of persuasion" that "there is no reasonable expectation that the alleged violation will recur." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d at 109 (citation omitted). In determining whether a defendant has met its burden, the Second Circuit has instructed that a defendant's representations in its briefs and at oral argument "are entitled to some deference." *Id.* (citation omitted). Still, it

is "reasonable" to expect a violation will recur where a defendant insists "on the validity of the challenged practice," or where "it [is] likely that the plaintiffs may again find themselves in the same situation" and the defendant retains the same ability to repeat the challenge conduct. *Ahrens*, 852 F.2d at 53.

Defendants persuasively argue that the system-wide changes implemented to remedy their challenged conduct are permanent and prevent the reoccurrence of the complained-of delays. (Defs.' Reply at 4.) In support, Defendants outline "several hurdles" they would face in discarding the improved UI application process. (Seventh Suppl. Thompson Decl. ¶ 22.) Specifically, reverting to a server-based UI application system, as opposed to the cloud-based Google Application, "would not only require financial investment, but it would also be a resource intensive process[.]" (*Id*.) The Department of Labor would need to recreate the automated "bot" software used to reduce staff resources for data entry, and the identity verification and fraud prevention processes used to comply with federal requirements. (*Id*.) Additionally, the Department of Labor would need to revise all messaging and website links relative to the application process and increase staffing to handle claimant calls and confusion. (*Id*.) In sum, the evidence along with the representations made by Defendant have demonstrated that it is not reasonably likely that Defendants will revert to the prior system under which the delays occurred.

Plaintiffs challenge this conclusion again arguing that the Google Application does not meaningfully alter or simplify the process for FHV claimants to apply and receive UI benefits. (Pls.' Opp'n at 5.) Plaintiffs continue that Defendants have not completely eradicated the effects of their violation because "continuing delays in UI processing time suggests that Defendants' conduct since the [P.I.] Order is nothing more than superficial change." (*Id*. at 8.) In support of

this argument, Plaintiffs point to evidence that 86 drivers had contacted NYTWA in early 2021 and reported that they were still waiting to receive retroactive benefits.  (*See* Langley Fourth Decl. ¶¶ 11; Pls.' Opp'n at 9.)  As discussed above, Defendants' failure to pay retroactive benefits to these claimants was the result of an unexpected error in its prior application system. Further, the NYTWA conceded in June 2021 that the number of FHV claimants waiting to receive initial or retroactive payments was in decline.  (*See* Eighth Suppl. Thompson Decl., Ex. A (email from NYTWA), ECF No. 71-9.)  Defendants now represent that there are zero FHV claimant Requests for Reconsideration pending review.  (Seventh Suppl. Thompson Decl. ¶ 12.) Plaintiffs offer no counter.  Thus, the effects of Defendants' delays in processing FHV claimant UI benefits have been eliminated.  *See Am. Freedom Def. Initiative*, 815 F.3d at 110 (applying voluntary cessation doctrine where the plaintiff "suffers no ongoing harm from or lingering effect" of the challenged conduct).

A review of the legal authority upon which Plaintiffs rely does not alter the court's view. Take *Amin v. Colvin* for example.  In *Amin*, the plaintiffs alleged that the Social Security Administration systematically failed to properly process appeals, causing the plaintiffs to temporarily lose their benefits.  *Amin v. Colvin*, 301 F. Supp. 3d 392, 395 (E.D.N.Y. 2018).  One such systematic failure, plaintiffs alleged, was the defendants' failure to properly docket requests for appeals.  *Id*. at 396.  The court rejected the defendants' argument that the plaintiffs' claims were rendered moot by the implementation of reforms to make it more likely that appeals would be timely docketed.  *Id*. at 400.  Specifically, the court found that "the implementation of reforms, at most, raises a question of fact as to their effectiveness."  *Id*.  Here, Defendants have demonstrated the effectiveness of their systematic reforms by not only clearing a backlog of over 40,000 FHV claimant Requests for Reconsideration, but also by processing new FHV claimant

16

applications in five days on average.  Indeed, by April 2021, there were no FHV claimant

Requests for Reconsideration pending review.  (Seventh Suppl. Thompson Decl. ¶ 12.)

Plaintiffs next point to *Ahrens v. Bowen* for the proposition that Defendants' conduct is

likely to recur because "Defendants have an extensive history of the same challenged conduct."

(Pls.' Mem. at 6.)  This authority too is inapposite.  In *Ahrens*, the court's conclusion that the

voluntary cessation of the challenged conduct did not render the claims moot was based on a

variety of factors simply not present here.  Foremost, the court rejected the genuineness of the

defendants' remediating efforts.  *See Ahrens v. Bowen*, 852 F.2d 49, 53 (2d Cir. 1988).  That is

that Court found that the defendants' conduct during the pendency of the lawsuit was evidence

that the defendants "harbored' an intent to strategically avoid judicial review of the challenge

conduct.  *Id.*  Specifically, the court stated:

> The fact that the Secretary, who had repeatedly refused to waive recoupment in the
> present case over a five-year period, suddenly elected to do so on the eve of
> plaintiffs' motion for summary judgment is a clear indication of such an intent.
> This strategic maneuver suggests an attempt by the Secretary to conjure up an
> argument for mootness and thwart adjudication of this issue.

*Id.*  Equally damning, the court highlighted the defendants' ongoing insistence that the

challenged conduct was valid.  *See Id*.  Indeed, the court concluded that "[i]t is precisely his

insistence on the validity of the challenged practice that makes it 'reasonable' to expect that the

conduct will be repeated."  *Id*.

Here, by contrast, there is no evidence to suggest that Defendants conduct is motivated by

anything other than an intent to eradicate the delay in payment of UI benefits to FHV claimants.

Defendants did not require Plaintiffs to engage in a lengthy litigation before it chose to act.

Instead, even before the Court ruled on Plaintiffs' motion for preliminary injunction, Defendants

engaged in good faith negotiations with Plaintiffs to devise what would ultimately be the

foundation for the Court's subsequent P.I. Order. Far from insisting that the delays in payments to FHV claimants are somehow valid, Defendants invested in new technology and dedicated significant resources to resolving the delays that gave rise to the litigation. Accordingly, Plaintiffs' claims are moot.

Plaintiffs rightfully note that claims which are otherwise moot may survive if they "present issues that are capable of repetition, yet evading review." *Haley v. Pataki*, 60 F.3d 137, 141 (2d Cir. 1995) (internal quotation and citation omitted). However, in the absence of a class action, this exception only applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). "Both prongs of the exception must be present . . . ." *Cook v. Colgate Univ.*, 992 F.2d 17, 20 (2d Cir. 1993). Defendants argue this exception to mootness does not apply because there is no "credible argument" that Plaintiffs could be subjected to the same delays in view of the Department of Labor's improvements to the UI application process. (Defs.' Mem. at 12.) The Court agrees.

\* \* \*

At bottom, Defendants have made significant changes to their UI benefits application and eligibility determination processes. Not only have these changes positively resolved thousands of FHV Claimants' applications for UI benefits, resulting in an improved and truncated process measured in days not months, but they have also obviated the need to rely on employer-reported wages from FHV companies. Defendants have sufficiently redressed Plaintiffs' harm and, as such, Plaintiffs claims are dismissed as moot.[4]

---

[4] Having found Plaintiffs' claims moot, the Court need not address Defendants remaining arguments for dismissal.

18

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to compel compliance with the P.I. Order is

DENIED and Defendants' motion to dismiss the complaint is GRANTED.  The complaint is

hereby DISMISSED as MOOT.

                                           SO ORDERED.

Dated: Brooklyn, New York             /s/ LDH
       September 2, 2022            LaSHANN DeARCY HALL
                                 United States District Judge